**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Elwood MORRIS, Jr.,
Defendant-Appellant.**

**Nos. 80–7443, 80–7444.**

United States Court of Appeals,
Fifth Circuit.
Unit B

June 11, 1981.

Grace E. Evans, Asst. Federal Public Defender, Augusta, Ga., for defendant-appellant.

J. Michael Faulkner, Asst. U. S. Atty., Augusta, Ga., Melissa S. Mundell, Asst. U. S. Atty., Savannah, Ga., for plaintiff-appellee.

Before DYER, TJOFLAT and FAY, Circuit Judges.

FAY, Circuit Judge:

Defendant-appellant, James Morris, seeks reversal of his conviction by a jury on two separate indictments of bank robbery. As grounds for reversal, appellant asserts improper joinder of counts, improper instruction as to reasonable doubt, improper admission of certain money found in appellant's possession, improper charging by the trial court as to possession of recently stolen property, failure to obtain a second search warrant upon discovering a locked box while executing an initial search warrant at appellant's residence, and failure to present sufficient facts to support the issuance of the initial search warrant. Finding appellant's assertions meritless, we affirm both convictions.

## FACTS

In the early afternoon of January 10, 1980 the Augusta Federal Savings and Loan Association was robbed of $1,934.50 by a lone black male wearing a green army fatigue jacket and dark pants. He presented to the bank teller a small automatic weapon and demanded money. After receiving the money, the robber fled to a nearby automobile and departed. Witnesses identified the automobile as a red Chevrolet Impala, approximately the 1969 model.

On January 28, 1980 the Georgia Federal Savings and Loan Association, also in Augusta, Georgia, was robbed of $2,678.00 by a lone black male wearing an army fatigue jacket, blue jeans, a ski cap, and sunglasses. The robber presented to the teller a small black automatic weapon, similar to that used in the earlier robbery, and demanded money. In this case, no one observed the robber's getaway.

The tellers at both banks gave similar descriptions of the robber to investigators, except that he was described as being clean

shaven by the teller at the first bank and as having a moustache by the teller at the second bank. On January 31, 1980 the investigating agent spotted a reddish colored 1969 Chevrolet Impala parked at appellant's house bearing a license plate number very similar to that which a witness indicated was on the car the robber used to flee the scene of the first robbery. The following day the same agent returned to appellant's home with a search warrant and executed a search of the premises. The agent found $1,150 in cash in a locked jewelry box, an army fatigue jacket, a box of .25 caliber ammunition and two dark ski caps. That same afternoon appellant was arrested by FBI agents while driving the same car seen in front of his home the previous day. At the time of his arrest the agents took a loaded .25 caliber automatic pistol and a maroon ski cap from the appellant.

Appellant was indicted in February 1981 on two separate counts of robbing a federally insured savings and loan association, in violation of Title 18 U.S.C. § 2113(a) and (d). Pursuant to the government's motion and over defense counsel's objection, the district judge ordered that the two indictments be tried together. After a trial, during which appellant was positively identified as the robber of the Augusta Federal Savings and Loan, appellant was convicted on both counts and sentenced to imprisonment of fifteen years for each count, sentences to run concurrently.

## CONSOLIDATION OF THE INDICTMENTS

■ Appellant argues that the District Court 491 F.Supp. 222 erred in failing to order a severance of the counts under Rule 14 of the Federal Rules of Criminal Procedure, on the grounds that the joinder of

those counts,[1] under Rule 8 of the Federal Rules of Criminal Procedure, was prejudicial to the appellant. It is significant to note that appellant does not assert that joinder of the counts would have been impermissible under Rule 8 and that, accordingly, the requirements of Rule 13 were not satisfied.[2] The only question which we must determine, therefore, is whether the appellant was in fact prejudiced by the joint trial of the two counts. In ruling on a motion for severance, the trial judge must weigh the likelihood of prejudice against the interests of judicial economy. *United States v. Wolford*, 614 F.2d 516, 518 (5th Cir. 1980); *United States v. Cuesta*, 597 F.2d 903, 919 (5th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979). Because that determination is discretionary, this Court will disturb the trial court's ruling only when the appellant can show that the trial court abused its discretion. *United States v. Salomon*, 609 F.2d 1172, 1175 (5th Cir. 1980). In order to demonstrate abuse of discretion, the defendant bears a heavy burden of showing "specific and compelling" prejudice. *United States v. Morrow*, 537 F.2d 120, 138 (5th Cir. 1976),[3] *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977).

■ We have thoroughly reviewed the entire record in this case and find it totally lacking of any suggestion that the appellant was prejudiced by the joint trial of the two counts. Any inference that the jury might otherwise have drawn, from the possible cumulation of evidence, that appellant was a "bad guy," was totally negated by the thorough and oft repeated cautionary instruction that the jury should consider the evidence going to each count separately. At the close of the trial of the first count,

---

1. Actually, the counts were not joined in a single indictment pursuant to Rule 8, they were separate indictments tried jointly under Rule 13. The focus of our inquiry is on Rule 8, however, because joint trial of separate indictments under Rule 13 is proper when joinder of counts in a single indictment would have been proper under Rule 8.

2. *See* note 1 *supra*.

3. "The test in this circuit for reviewing the denial of a severance is that the defendant must be unable to obtain a fair trial without a severance and must demonstrate compelling prejudice against which the trial court will be unable to afford protection." *United States v. Mota*, 598 F.2d 995, 1000 (5th Cir. 1979) [quoting *United States v. Swanson*, 572 F.2d 523, 528 (5th Cir.), *cert. denied,* 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978)].

the district judge properly explained to the jury that that was the totality of the evidence they could consider on that count and that they should consider what they were about to hear going to the second count independent of what they had previously heard. The court repeated this several times during the trial of the second count and thoroughly explained it twice again during his final instructions to the jury. We think this adequately rebuts appellant's suggestion that prejudice must be inferred from the fact of the joint trials.[4]

Though we think the assertion may be meritorious, we do not reach the government's contention that joint trial was not prejudicial because evidence from the first trial would have been admissible at a separate second trial under Rule 404(b) of the Federal Rules of Evidence.

## THE "REASONABLE DOUBT" INSTRUCTION

Appellant asserts that the trial court's definition of "reasonable doubt" constitutes reversible error under the decision of this Court in *United States v. Baptiste*, 608 F.2d 666 (5th Cir. 1979). We find no merit in that contention and, accordingly, hold that the trial court's instruction on reasonable doubt was proper.

In *Baptiste*, we held that it was error to charge the jury that "[p]roof beyond a reasonable doubt is the kind of proof that you would be willing to rely and act upon in the management of your own personal affairs." 608 F.2d at 688. That charge, we concluded, impermissibly lessened the government's burden of proof in a criminal prosecution. The charge in this case, although similar to that in *Baptiste*, included qualifying language that we conclude rendered it adequate. The court in this case charged the jury that "[p]roof beyond a reasonable doubt, therefore, is proof of such a convinc-

ing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs." *Transcript* at 235. The District Court added the language thought critical to this Court, and omitted in *Baptiste*, "without hesitation." *United States v. Tobin*, 576 F.2d 687, 694 (5th Cir.), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978).[5] Additionally, the trial court changed the *Baptiste* charge from "in the management of your own personal affairs" to "in the most important of your own affairs." We hold that these distinctions from the infirm *Baptiste* charge were sufficient to render the charge adequate. Appellant makes much of the fact that the charge differs from that which we have approved in *United States v. Prince*, 515 F.2d 564, 566 n.1 (5th Cir.), *cert. denied*, 423 U.S. 1032, 96 S.Ct. 563, 46 L.Ed.2d 406 (1975). *See Tobin, supra; United States v. Turk*, 526 F.2d 654, 659 (5th Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976). We are at a loss to understand how *Prince* supports appellant's position. It is true that in *Prince* the "cause a reasonable person to hesitate" language is framed in the affirmative, whereas the "act without hesitation" language in this case is framed in the negative. Such a distinction, however, is without substance. The operative word is "hesitate", not the tense in which it is used. *See Tobin* at 694. Moreover, the instruction given by the District Court here was superior to that in *Prince* in that, in *Prince*, the hesitation referred to "making a decision or in taking an important step in some serious matter in his own private affairs," whereas here the hesitation referred to "the most important of your own affairs." We think "most important" is a higher standard than "some serious". In any event, we conclude the jury

---

4. It is possible that the joint trial could have worked to appellant's advantage. The only genuine issue was the identity of the robber. During the trial of the first count the robber was described by the bank teller as clean shaven. During the trial of the second count the teller at the other bank described the robber as having a moustache. Had the jury accepted those conflicting identifications, it is possible the appellant would have been found innocent on one or both of the counts.

5. In *Tobin*, the Court said "would not hesitate", whereas here the District Court said "without hesitation." We think that is a distinction without a difference.

was given a correct understanding of the concept of "reasonable doubt' as used in the parlance of criminal law.

ADMISSION OF $1,150 INTO EVIDENCE

■ Appellant urges that the trial court erred in admitting into evidence $1,150 cash found in his home during the conduct of a search pursuant to a search warrant. The money consisted of one $50 bill, fifty $20 bills, and one-hundred $1 bills. Appellant insists that there was nothing to link that money to the banks robbed. To the extent that none of it was "bait money" bearing serial numbers traceable to either bank, appellant is correct. There are two reasons, however, why appellant's basic premise is incorrect.

The money was admitted into evidence only with respect to the first robbery. The evidence of guilt in that case was overwhelming; two witnesses positively identified him, he was in possession of clothing similar to that used by the robber, and his car was similar to and had a similar tag number as that identified by a witness as the "getaway car." As this Court has said,

> Where there is other evidence of the guilt of the accused and the crime is of such a nature that the acquisition of money may be regarded as a natural or ordinary result of its perpetration, evidence is admissible of the sudden acquisition of money by the defendant . . . at or subsequent to the time the offense was committed, although the source of the money is not definitely traced or identified by the prosecution.

*United States v. Rouse*, 494 F.2d 45, 46 (5th Cir. 1974), quoting *United States v. Manning*, 440 F.2d 1105, 1110 (5th Cir.), *cert. denied*, 404 U.S. 837, 92 S.Ct. 125, 30 L.Ed.2d 69 (1971). Applying that rule to the facts of this case, we hold that the District Court did not err when it allowed the money to be admitted into evidence.

The other basis for admitting the money into evidence was to demonstrate a dramatic change of financial condition before and after the robbery in question. The government introduced some evidence, admittedly not overwhelming, of appellant's impecu-

niosity prior to the day of the first robbery. Testimony was also produced that appellant was able to pay a previously overdue bill with cash immediately after the first robbery. The money, therefore, was probative as to the likelihood that appellant did or did not rob the bank. *See Self v. United States*, 249 F.2d 32, 35 (5th Cir. 1957). Appellant is correct that possession of the money in question does not prove that he perpetrated the crime. That, however, is a question of the weight of that evidence, not its admissibility.

THE POSSESSION OF RECENTLY STOLEN PROPERTY CHARGE

Appellant asserts error in the trial court's charge that an inference may be drawn from the possession of recently stolen property, in this case the $1,150 cash, that the person in possession knew the property was stolen and in some way participated in the theft. Appellant contends that the government's inability to establish that the money was in fact stolen should preclude the giving of such a change. We think that appellant's contention is without merit. The charge does not require the jury to draw the inference of knowledge or participation, it merely permits it. That is quite proper in a case in which the government has introduced sufficient evidence from which a jury could reasonably conclude that the property was stolen. *United States v. Castell*, 584 F.2d 87, 89–90 (5th Cir. 1978), *cert. denied*, 440 U.S. 925, 99 S.Ct. 1256, 59 L.Ed.2d 480 (1979). When, as in this case, we have determined that the evidence was properly introduced and the district judge admonished the jury that before it could draw the inference it must first conclude that the money was in fact stolen, Transcript at 242–43, the giving of the charge was quite proper. *Id.*

FAILURE TO OBTAIN A SECOND SEARCH WARRANT

■ Appellant urges that the money introduced into evidence should have been suppressed because it was taken from a locked jewelry box for which a separate search warrant had not been obtained. Appellant would have us so hold despite the

fact that the box was opened pursuant to a valid warrant [6] authorizing the search of his residence. Appellant urges that his expectation of privacy in the jewelry box was independent of rather than part of his expectation of privacy in his home. Appellant has not cited us one case in which this or any other court has required a second, or for that matter third, fourth, fifth, etc., search warrant to validly search an area within the scope of an existing warrant, and we are not inclined to do so. It would be a different matter if the box had been in a geographic area not covered by the warrant or if the objects sought in the warrant were of a size that would not fit in the box. Neither of those situations are the case here however. To follow appellant's logic would require either that "an additional search warrant . . . [be obtained] for each container within a larger container . . ." *United States v. Kralik*, 611 F.2d 343, 345 (10th Cir. 1979), *cert. denied*, 445 U.S. 953, 100 S.Ct. 1603, 63 L.Ed.2d 788 (1980), or that the agent seeking the warrant possess extrasensory perception so that he could describe, prior to entering the house, the specific boxes, suitcases, sofas, closets, etc. that he anticipated searching. Obviously, neither alternative is either reasonable or required. The search warrant issued allowed the agents to search the jewelry box in question.

## THE VALIDITY OF THE SEARCH WARRANT

 Appellant's final contention is that the affidavit that formed the basis for the issuance of the search warrant was legally insufficient to establish the requisite probable cause. The proper inquiry is whether the magistrate was provided with sufficient reliable information from which he could reasonably conclude that the items sought in the warrant were probably at the location sought to be searched. *United States v. Chester*, 537 F.2d 173, 175–76 (5th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1120, 51 L.Ed.2d 548 (1977). In this case, there is no question that the magis-

trate had sufficient reliable information to resolve that question in the affirmative. The affidavit that formed the basis for the search warrant set forth when and where the robberies had taken place, that a small automatic handgun had been used, that the perpetrator had been identified several times subsequent to the robberies as the appellant, and that the car parked in front of appellant's home matched the description of the car a witness identified as the "getaway car" in the first robbery. The magistrate also knew that the second robbery had occurred in the last several days and that many of the items sought, including the handgun, articles of clothing, and money, were not such that they necessarily would be disposed of immediately after the crime. Having that information before him, the magistrate correctly concluded that there was probable cause to search the home and car of appellant for the items sought.

Having concluded that all the assertions of error by appellant are without merit, the judgment of the District Court is AFFIRMED.

---

6. *See discussion* of validity of the search warrant, *infra* at 573.