**UNITED STATES of America**

v.

**Rocco SANTARSIERO, Defendant.**

**No. S83 Cr. 174–CSH.**

United States District Court,
S.D. New York.

June 1, 1983.

**538**

Rudolph W. Giuliani, U.S. Atty., New York City, for plaintiff; Paul L. Shechtman, Asst. U.S. Atty., New York City, of counsel.

Hochheiser & Aronson, New York City, for defendant; Kenneth J. Aronson, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Defendant Rocco Santarsiero was indicted on charges of violating the federal laws with regard to the production and use of counterfeit credit cards. This opinion addresses defendant's motions, in advance of trial and pursuant to Rule 12, F.R.Cr.P., for an order suppressing from use in evidence certain items removed by the police from his residences in Arizona and New York. Defendant also seeks the return of certain of the items removed from his New York apartment pursuant to Rule 41(e), F.R.Cr.P. For the reasons stated, defendant's motions are denied.

### The Arizona Search

Defendant moves to suppress the items seized during the search of his Arizona residence, contending that the supporting affidavit does not provide the requisite probable cause to believe that the items sought would be found in the localities to be searched. He argues that "the affidavit of Det. Hill supplies not one iota of hard evidence that contraband or instrumentalities of a crime were located in the defendant's house or vehicle." (Brief at 4–5). Defendant concludes that "[t]o uphold the instant search warrant would be tantamount to finding that probable cause to arrest an individual creates probable cause to search the person's house, car, or office." (Brief at 5).

Probable cause to arrest an individual does not, in and of itself, provide probable cause to search that person's home or car. Thus, an arresting officer is not authorized to search beyond the limits of a search incident to that arrest. See *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1968). A search beyond those limits must be authorized by a warrant based on a separate showing of probable cause. Here, the Arizona police obtained a warrant before they searched defendant's home and car. The dispositive question is whether the affidavit in support of that warrant provided the issuing judge with sufficient facts to permit a finding of probable cause that the evidence sought would be found in defendant's home or car.

Certain established standards guide this Court's review of the issuing judicial officer's finding of probable cause. First, it is by now almost axiomatic that the affidavit offered in support of a warrant should be construed "in a common-sense and realistic fashion," *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *see also United States v. Kahan*, 572 F.2d 923, 929 (2d Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 112, 58 L.Ed.2d 128 (1978), rather than assessed in a piecemeal or technical manner. *United States v. Abrams*, 539 F.Supp. 378, 386 (S.D. N.Y.1982). Further, an issuing judge's finding of probable cause is itself a substantial factor tending to confirm the warrant's validity on review. *United States v. Jackstadt*, 617 F.2d 12, 13 (2d Cir.), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980); *United States v. Perry*, 643 F.2d 38, 50 (2d Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981), and, in a close case, "any doubts should be resolved in favor of upholding the warrant." *Jackstadt, supra*, 617 F.2d at 14. In brief, the issuing judge's determination is to be viewed flexibly, deferentially, and with an eye to encouraging rather than discouraging the use of warrants by law enforcement officers. *Ventresca, supra*, 380 U.S. at 109, 85 S.Ct. at 746 (1965). With these stan-

dards in mind, I turn to the sufficiency of the warrant now before the Court.

The warrant challenged by defendant was issued by a state court judge in Arizona on March 9, 1983. The warrant authorized a search of the premises at 5017 N. 78th St. in Scottsdale, Arizona, and of a white 1983 Cadillac No. BFJ–235, for evidence of "fraud scheme/artifice" committed by Jeffrey Steven Steele.[1] The evidence sought, as set forth in the warrant, consisted of:

"1) Any receipts related to credit card usage on American Express Card # 3710–117264–31008

"2) Any American Express Cards under any other names and/or numbers, or blank cards

"3) Any embossing equipment

"4) Any credit card subscriber lists."

The affidavit in support of this warrant, submitted by Detective R.M. Hill, discloses the following facts. Earlier that day, March 9, 1983, a man had entered the Ello Caine Travel Agency in Scottsdale, Arizona and attempted to purchase airline tickets for a flight to New York using an American Express Card No. 3710–117264–31008 in the name Roy Raymond. (¶ 1). Ms. Ello Caine, the travel agent, became suspicious because the customer had a "raspy voice" as did the person who two months earlier had purchased airline tickets using a credit card which proved to be counterfeit. *Id.* Ms. Caine immediately telephoned American Express, and an American Express employee contacted Roy Raymond, the cardholder, in New York. Mr. Raymond stated that he was in possession of his credit card. (¶ 2). American Express then advised Ms. Caine that a fraud was in progress and that she should retain the credit card and obtain whatever information from the customer that she could. (¶ 3).

At this point, the customer became nervous, attempted unsuccessfully to regain his credit card, ran out of the store to his car, and drove south nearly running down two pedestrians. (¶ 4). Ms. Caine had followed the customer out of the travel agency and she observed that his car was a new, white, four-door Cadillac with Arizona license number BFJ–235. *Id.* The police then traced this license number and learned that it was issued for a Cadillac sedan to Jeff Steele, 5017 N. 78th St. (¶ 5). Proceeding to that address approximately ten minutes after the events in the travel agency, the police found the car in a carport, unoccupied with the engine still warm. (¶ 6). The police then questioned a neighbor and the local postal carrier and learned that the resident at that address was from New York and matched the description of the customer at the travel agency provided by Ms. Caine. (¶¶ 7–8). The police rang the door bell and knocked on the door of the residence, and while they heard noises from within, no one opened the door. (¶ 9).

Probable cause, as its name suggests, deals in probabilities, not in certainties. Probable cause to believe that certain items will be found in a specific location need not be based on direct, first-hand or, as defendant describes, "hard" evidence. *Anthony v. United States,* 667 F.2d 870, 874 (10th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982); *United States v. Lockett,* 674 F.2d 843, 846 (11th Cir.1982); *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir.1977); *United States v. Pheaster,* 544 F.2d 353, 373 (9th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). The issuing judge is entitled to consider all the facts presented to him and to draw reasonable inferences from those facts based upon his common sense and experience. *United States v. Jackstadt, supra,* 617 F.2d at 14. Thus, the issuing judge can properly conclude that probable cause exists where:

"the nexus between the items to be seized and the place to be searched rest[s] not on direct observation ... but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences

---

1. Defendant admits that he rented the townhouse at 1517 North 78th Street, Scottsdale, Arizona using this alias. (Brief at 10).

as to where a criminal would be likely to hide [incriminating evidence],"

*United States v. Lucarz,* 430 F.2d 1051, 1055 (9th Cir.1970) (citations omitted).

Numerous cases have applied the principle that probable cause to search a suspect's residence may be based on reasonable inferences and need not rest on direct evidence that the items sought will be found. In *United States v. Bagaric,* 706 F.2d 42 (2d Cir.1983) the Court of Appeals for this Circuit recently upheld a search of the suspect's home where the affidavit supporting the warrant placed the suspect at the scene of a bombing shortly before and after it occurred and demonstrated that he had a motive for the bombing. Despite the lack of any direct evidence, the Court explained:

"Under these circumstances, we consider it entirely reasonable for the magistrate to have determined the explosives, used at 5:18 A.M. had been brought from [the suspect's] home, and therefore that his residence was the likely location at which would be found the traces of bomb-making activity sought."

*Id.* at 66.

Similarly, in *United States v. Melvin,* 596 F.2d 492 (1st Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979), the supporting affidavit established that the suspect owned a tavern which had been bombed; that a witness had seen a white Cadillac leave the scene moments before the explosion; that a police officer had earlier observed a white Cadillac and a man fitting the suspect's description at the tavern; and that the suspect owned a white Cadillac which was parked at his home a day after the bombing. *Id.* at 496. The Court upheld the search based on this affidavit, noting that "it was permissible for the issuing judge to infer that evidence or instrumentalities might be found in [the suspect's] home" and that "[u]nder these circumstances, defendant's house emerges as the likely location" of the items sought in the search. *Id.* at 498.

In *United States v. Morris,* 647 F.2d 568 (5th Cir.1981), the affidavit which formed the basis for the search warrant set forth that seven robberies had occurred, the last of which was several days before the search; that the defendant had been identified several times as the robber; and that the car parked in front of defendant's home matched the description of the "getaway car" in the first robbery. *Id.* at 573. Upholding the search the Court explained, "Having that information before him, the magistrate correctly concluded that there was probable cause to search the home and car of the [defendant] for the items sought." *Id.*

In *United States v. Maestas,* 546 F.2d 1177 (5th Cir.1977), the affidavit supporting the warrant disclosed that the defendant was part of an ongoing "large-scale interstate counterfeiting ring" who had herself handled counterfeit checks. *Id.* at 1180. Finding sufficient probable cause to search her residence, the Court noted, "While there is no first-hand evidence in the affidavit that materials subject to seizure were in the premises where the officials proposed to conduct their search, this is not always necessary." *Id.* The Court explained:

"The affidavit need not contain information providing certainty that the objects sought will be found as a result of the search. It is only necessary that 'the facts and circumstances described in the affidavit would warrant a man of reasonable caution to believe that the articles sought were located' at the place where it was proposed to search. *United States v. Rahn,* 511 F.2d 290 (10th Cir.1975)."

*Id.* The Court concluded that "[d]efendant's apartment was the only logical place to conduct the search for the counterfeiting paraphernalia." *Id.*

Finally, in *Anthony v. United States,* 667 F.2d 870 (10th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982), the Court upheld a search of the defendant's residence where the affidavit set forth the circumstances of the defendant's arrest, established that the defendant resided at the address searched, and described the device used to commit the crime. The Court observed:

"In determining whether or not probable cause exists to believe that evidence of a crime will be found at the place to be searched, the magistrate is entitled to rely upon practical considerations of everyday life."

*Id.* at 874. Rejecting defendant's argument that the affidavit supporting the warrant was insufficient "because nobody directly observed any evidence of the crime at his residence," the Court explained:

"Nor is it necessary for the affidavit to contain a recital that someone had personally observed evidence at the defendant's residence when it is reasonable to assume that certain types of evidence would be kept at a defendant's residence."

*Id.*[2]

■ Viewed in the light of these cases, and in a commonsense and realistic manner, it is clear that the affidavit of Detective Hill provided a factual basis for the belief that probable cause existed in this case. Detective Hill's affidavit disclosed that an individual matching the description of the resident of the premises had earlier that same day attempted to purchase airline tickets to New York with a counterfeit credit card. A witness also told the police that the resident was from New York. The individual using the counterfeit credit card fled in a white Cadillac which was found parked, with the engine still warm, outside the residence searched. The white Cadillac in which the customer had fled the travel agency was registered in the name of the resident of the premises. Thus, as in *United States v. Morris* and *United States v. Melvin, supra,* there was a direct link between the crime and the premises searched—a car spotted at the scene of the alleged crime was parked outside. This link is especially strong in the instant case since the police found the car approximately ten minutes after the crime occurred. The affidavit also disclosed that upon ringing the bell and knocking on the door of the residence, the police officers heard noises from within but no one opened the door. While not incriminating in and of itself, this fact becomes suspicious in the context of the events set forth in the affidavit.

Detective Hill's affidavit also provides a factual basis for the issuing judge to conclude that the resident of the premises was engaged in more than an isolated instance of credit card fraud limited to the single card retained by the travel agent. The travel agent recognized the man who attempted to use the counterfeit credit card as the same individual who had perpetrated a · similar crime several months earlier. While not made explicit in the affidavit, the issuing judge could conclude, based upon common experience, that more than one credit card was involved. This is so because a counterfeit credit card can be used for

**2.** The underlying facts and circumstances of these cases distinguish them from those relied on by the defendant. In *United States v. Flanagan,* 423 F.2d 745 (5th Cir.1970), the Court invalidated a search of defendant's Fort Worth home where he had been arrested in Dallas, Texas in possession of some of the property stolen in Houston ten days earlier. The Court observed: "That a named person who is a known felon has committed a burglary, plus possession by the suspect of some of the proceeds when arrested, does not without more authorize the issuance of a warrant to search the residence of the accused *miles away.*" *Id.* at 747 (emphasis added).

In *United States v. Gramlich,* 551 F.2d 1359 (5th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 201, 54 L.Ed.2d 141 (1977), the defendant was arrested over fifty miles from his residence while unloading marijuana from a freighter. Federal agents had placed his residence under continuous surveillance for over three weeks prior to defendant's arrest, yet "[n]o mention was made of any suspicious activity occurring at or near the residence." *Id.* at 1362.

Finally, in *United States v. Lockett,* 674 F.2d 843 (11th Cir.1982), the Court invalidated a search of defendant's residence in Sweetwater, Alabama, based on an affidavit tying defendant to a bombing in another town over sixty miles away. The affidavit did not disclose any suspicious activity occurring at the residence. It is not clear whether the Court of Appeals for this Circuit would take a similar view in light of its recent opinion in *United States v. Bagaric, supra,* discussed in the text.

Viewed together, these cases do not contradict the principle that probable cause can be inferred from the circumstances presented to the issuing judge; they simply present different circumstances which fail to support the necessary inference.

only one month before the fraudulent purchases appear on the billing statement of the legitimate cardholder and alert him to the fraud. As the Court of Appeals for this Circuit has commented, "[J]udges are not required to exhibit a naivete from which ordinary citizens are free." *United States v. Stanchich,* 550 F.2d 1294, 1300 (2d Cir. 1977). It is equally true that the issuing judge could fairly be deemed to have understood that as opposed to a stolen credit card, a counterfeit credit card is a more sophisticated instrument and that production or use of such cards might entail possession of the items or equipment sought in the search.

The circumstances described in the affidavit together with the reasonable inferences drawn from them undoubtedly provided the requisite probable cause to believe that the items sought might be found in defendant's car or home. "The items specified in the search warrant were the types of things that a person who had participated in the [crimes alleged] might possess." *United States v. Pheaster, supra,* 544 F.2d at 373. Moreover, defendant's car and residence were the only "logical" or "likely" locations at which these items might be found. See

*United States v. Bagaric; United States v. Melvin; United States v. Maestas; supra.* I find that the warrant authorizing the search of defendant's car and residence in Arizona was based on probable cause; accordingly, defendant's motion to suppress the fruits of this search is denied.[3]

*The New York Search*

■ Defendant's New York apartment was searched pursuant to a warrant issued by the Hon. Nina Gershon, United States Magistrate, on September 8, 1982. Unlike the Arizona warrant, defendant does not challenge the validity of the warrant itself.[4] Instead, defendant seeks to suppress certain items which were seized during the course of the search but which were not specified in the warrant.[5] The seizure of these items, occurring "without prior approval by judge or magistrate, [is] *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The exception relied upon by the Government is the plain view doctrine, articulated by Justice Stewart's plurality opinion in *Coolidge v. New Hamp-*

3. I also reject defendant's argument that the warrant is invalid because the items sought could be easily destroyed or removed, and hence it was not reasonable in the circumstances to believe that they would be found at the time of the search. Defendant relies on *United States v. Charest,* 602 F.2d 1015 (1st Cir.1979), in which the Court relied on similar reasoning to invalidate a search warrant seeking a handgun used in a murder sixteen days earlier. Here, by contrast, the crime had occurred earlier that same day and the issuing judge could reasonably conclude that it was part of an ongoing scheme. Moreover, unlike a handgun or documentary evidence, it is not clear that a suspect engaged in a hasty retreat could so easily move or dispose of embossing equipment.

4. Defendant's counsel states, correctly, that the New York search warrant "was most probably based upon probable cause." (Aronson Aff. ¶ 16). The New York search was based, *inter alia,* upon the statements of three confidential informants, all of whom knew the defendant and had been involved in criminal dealings with him. Each informant reported direct statements by the defendant that items in his apart-

ment had been purchased with stolen credit cards. In addition, the affidavit discloses that each informant had provided reliable information in the recent past, and each informant corroborated the accounts provided by the others. There can be no doubt that the affidavit meets the standards set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and established probable cause to issue the warrant.

5. The Government has determined that it will not seek to introduce and will return to the defendant the following items: 1) his passport; 2) his Polaroid camera Model No. 660; and 3) a blue ledger book. The Government has also agreed to return to defendant "any other property seized in the search that Santarsiero shows was legitimately obtained or any of the money seized that Santasiero can trace, through credible evidence, to a legitimate source." (Brief at 2). The remaining items challenged by defendant are: 1) a stenographer's notebook containing telephone numbers; 2) $7,200 in cash; 3) jewelry; 4) a jewelry box containing jewelry.

*shire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

■ The Government must establish three conditions to bring a warrantless seizure within the plain view doctrine. As Judge Friendly explained in *United States v. Ochs,* 595 F.2d 1247, 1257 (2d Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979), the Government must meet:

> "... the two express limitations stated by Mr. Justice Stewart in *Coolidge v. New Hampshire,* supra, 403 U.S. at 467–71, 91 S.Ct. 2022 [at 2038–2040], namely, that a lawful search must be in progress and that the discovery of the evidence must be inadvertent, as well as the condition, 403 U.S. at 466–67, 91 S.Ct. at 2038, that 'the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them.'" (footnote omitted).

The defendant here bases his challenge on the last of these conditions. He contends that the evidentiary value of the items seized was not immediately apparent since "they were not contraband nor incriminating on their face." (Aronson Aff. ¶ 16).

The proper application of the plain view doctrine has consumed considerable judicial effort; "[i]nterpreting *Coolidge* is not an easy task." *United States v. Hare,* 589 F.2d 1291, 1294 (6th Cir.1979). The requirement that evidentiary value be "immediately apparent" has received its share of this judicial attention, and Judge Friendly has observed that "The [Supreme] Court has given little guidance as to what it meant by the phrase." *United States v. Ochs, supra,* 595 F.2d at 1257 n. 8. Enlightenment can be found, however, in the Court's recent decision in *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), in which Justice Rehnquist's plurality opinion discusses this requirement at length.

Justice Rehnquist begins his discussion with the observation:

> "Decisions by this Court since *Coolidge* indicate that the use of the phrase 'immediately apparent' was very likely an un-

happy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminating character of evidence is necessary for an application of the 'plain view' doctrine." —— U.S. at ——, 103 S.Ct. at 1542. In *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980), however, the Court had stated in dictum that "[t]he seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity*" (emphasis added). Finding this statement of the rule appropriate and consistent with the Fourth Amendment, the plurality opinion in *Texas v. Brown* expressly reaffirms it, a holding presaged by the Court of Appeals for the Second Circuit which had observed in *United States v. Ochs* that "under the plain view doctrine the incriminatory nature of an object is generally deemed 'immediately apparent' where police have probable cause to believe it is evidence of a crime," *supra,* 595 F.2d at 1258.

Having determined that probable cause is the proper standard to permit the seizure of property in plain view, Justice Rehnquist next reviewed the well established and familiar requirements of probable cause. Probable cause is a "flexible, common-sense standard" and "[a] practical, nontechnical probability that incriminating evidence is involved is all that is required. *Brinegar v. United States,* 338 U.S. 160, 176 [69 S.Ct. 1302, 1311, 93 L.Ed. 1879] (1949)." *Brown v. Texas, supra,* —— U.S. at ——, 103 S.Ct. at 1543. Certainty is not required:

> "It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' *Carroll v. United States,* 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543] (1925), that certain items may be contraband or stolen property, or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false."

*Id.*

■ Applying these standards to the instant case, the dispositive issue is whether

the facts and circumstances known to the agents at the time they seized the property would warrant a man of reasonable caution to believe that these items might be useful as evidence of a particular crime. Without difficulty, I answer that question in the affirmative.

Turning to the specific items in question, defendant challenges the seizure of a stenographer's notebook containing telephone numbers. Defendant correctly observes that there is nothing on the face of a stenographer's notebook of an incriminating nature. It is well settled that "[t]he seizure of documents as in 'plain view' is not improper however, notwithstanding the fact that some perusal is needed for the seizing agents to perceive the relevance of the documents to the crime." *United States v. Rega,* 496 F.Supp. 101, 105 n. 7 (S.D.N.Y. 1980) (Weinfeld, J.); *United States v. Mannino,* 635 F.2d 110 (2d Cir.1980); *United States v. Ochs, supra,* 595 F.2d at 1257 n. 8 (citing cases). In the *Ochs* case, the Court of Appeals for this Circuit explained that "[t]he police were entitled to glance through the bankbooks and the two notebooks to ascertain whether they constituted evidence or instrumentalities relating to the [crimes being investigated]." 595 F.2d at 1258. Limited inspection of this sort is permitted because "[p]olice officers are not required to ignore the significance of items in plain view even when the full import of the objects cannot be positively ascertained without some examination." *United States v. Roberts,* 619 F.2d 379, 381 (5th Cir.1980).

Having glanced through the notebook and observed the telephone listings, the agents surely had probable cause to believe that the notebook was potential evidence of the crime under investigation. "The standard for probable cause in the seizure of documents appears to be the same as it is with respect to any other seizure of 'mere evidence'—i.e. probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. In this examination, consideration of police purposes is required. *Warden v. Hayden,* 387 U.S. 294, 302 [87 S.Ct. 1642, 1647, 18 L.Ed.2d 782] (1967); *Andresen v. Maryland,* 427 U.S. 463, 483 [96 S.Ct. 2737, 2749, 49 L.Ed.2d 627] (1976)." *United States v. Ochs, supra,* 595 F.2d at 1258. The agents in this case knew, on the basis of the affidavit supporting the warrant, that the investigation had implicated others. In these circumstances, it would certainly warrant a man of reasonable caution to believe that the telephone listings in the notebook might aid in identifying or connecting these individuals with the defendant. See *United States v. Diecidue,* 603 F.2d 535, 559 (5th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980).

Defendant also challenges the seizure of $7,200 in cash from his New York apartment. Once again, however, I conclude that the agents had probable cause to believe that this cash was potential evidence of the crimes which they were investigating. While I need not at this stage of the proceedings determine the admissibility at trial of the seized currency, it is useful to note at the outset that courts have upheld the admission of cash where pecuniary gain is a basic motive or a tool or apparatus of the criminal misconduct charged. *United States v. Tramunti,* 513 F.2d 1087, 1105 (2d Cir.), *cert. denied,* 432 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *United States v. Falley,* 489 F.2d 33, 39 (2d Cir.1973). See also *United States v. Morris,* 647 F.2d 568, 572 (5th Cir.1981) ($1,150 seized during search of defendant's home "was probative as to the likelihood that [defendant] did or did not rob the bank").

The agents conducting the search of defendant's apartment were investigating criminal misconduct involving the production and use of counterfeit credit cards in violation of 15 U.S.C. § 1644(a). See Search Warrant, Ex. A to Aronson Aff. Credit cards are, in practical effect, "plastic money," and are a ready means for obtaining cash. The statute proscribing the use of counterfeit credit cards expressly recognizes this fact and prohibits their knowing use to "obtain money." 15 U.S.C. § 1644(a). In addition, the material submitted in support of the search warrant

disclosed that the cards could be sold for cash, a fact which must be deemed within the ordinary knowledge of an experienced law enforcement agent. In these circumstances, I conclude that the agents had probable cause to believe that the cash was evidence of the criminal scheme described in the affidavits supporting the search warrant. Accordingly, their "plain view" seizure of it must be upheld. *Brown v. Texas, supra.*

Defendant also challenges the seizure of various items of jewelry which bore no serial numbers or other identifying codes. At the outset, it should be noted that these items may well fall within the scope of the items enumerated in the search warrant. The warrant specifically authorizes the seizure of:

> "Jewelry, television sets, video cassette equipment, and any other items with identifiable serial numbers or on which serial numbers have been obliterated or with garment label lot numbers or which are in other ways traceable to their place of purchase."

Thus, reading the limiting language to apply to all of the items listed, the warrant would still authorize the seizure of jewelry which was "traceable to [its] place of purchase." In this regard, Special Agent Anthony Nelson explained in his supporting affidavit that "I also hope to trace the expensive jewelry back to the store where it was purchased and to confirm the use of a counterfeit card." (Nelson Aff. at 2; Ex. A to Aronson Aff.). Agent Nelson distinguished jewelry from appliances and electronic gear which "should all bear serial identification numbers." *Id.*

I need not decide this question, however, because even if the jewelry was not within the scope of the warrant, its seizure was justified under the plain view doctrine. The affidavit supporting the warrant contains statements by confidential informants to the effect that defendant had purchased expensive jewelry with counterfeit credit cards and that this jewelry was likely to be found in the apartment. CI1 disclosed that "within the past month," defendant had boasted to him that jewelry in his apartment had been purchased with counterfeit credit cards. (Nelson Aff. at 2; Ex. A to Aronson Aff.). CI3 informed the affiant that defendant had told him that he had used a counterfeit credit card to purchase "expensive jewelry" for his girlfriend, Diane. *Id.* at 3. CI1 had disclosed that Diane lived with defendant in the apartment searched. Based on this information, the agents had probable cause to believe that the jewelry was evidence or proceeds of the crime they were investigating, and their plain view seizure of it was justified.

This analysis applies equally to the jewelry discovered in the jewelry box. As previously discussed, the plain view doctrine is not vitiated by the fact that the agents must first inspect an item before its incriminating nature becomes apparent. Here, the agents were clearly entitled to open the jewelry box. This is so by virtue of the simple fact that they were authorized to search for jewelry. "It would be a different matter if the box had been in a geographic area not covered by the warrant or if the objects sought in the warrant were of a size that would not fit in the box. Neither of those situations are the case here however.... The search warrant issued allowed the agents to search the jewelry box in question." *United States v. Morris, supra,* 647 F.2d at 573. The Supreme Court has recently explained:

> "A search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers and containers in which the [item sought] might be found.... When a legitimate search is underway, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers and containers, in the case of a home ... must give way to the interest in the prompt and efficient completion of the task at hand."

**546**

*United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

CONCLUSION

Defendant's motions to suppress and to return items seized from his residences in Arizona and New York are denied, except insofar as the Government has agreed to return certain items and not to introduce them at trial.

It is So Ordered.