Bobby Joe EVANS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2001–CA–001685–MR.

Court of Appeals of Kentucky.

Aug. 29, 2003.

Matthew W. Boyd, Lexington, KY, for Appellant.

Albert B. Chandler III, Attorney General, Courtney J. Hightower, Assistant Attorney General, Frankfort, KY, for Appellee.

Before JOHNSON, KNOPF and McANULTY, Judges.

## OPINION

JOHNSON, Judge.

Bobby Joe Evans has appealed from a judgment of conviction and sentence entered by the Fayette Circuit Court on July

10, 2001, following his conditional plea of guilty to the charges of trafficking in a controlled substance in the first degree (cocaine),[1] and being a persistent felony offender in the second degree (PFO II).[2] Having concluded that the trial court correctly applied the law in denying Evans's motion to suppress and that the trial court did not abuse its discretion in its evidentiary ruling concerning expert testimony, we affirm.

The underlying facts of this case are not in dispute. On December 20, 2000, Detective David Straub of the Lexington Metro Police Department (LMPD) received information from a confidential informant that Evans was selling cocaine and morphine out of his apartment in Lexington, Kentucky, where he lived with his girlfriend. In January of the following year, the same confidential informant made a "controlled purchase" of cocaine from Evans. Based upon the information provided by the informant, and other evidence, the police obtained a warrant to search Evans's apartment for the following items:

> Cocaine, notes, letters, writings, documents, recordings, photos, monies, drug paraphernalia, or whatever type drug, presence of which may tend to indicate the illegal use of, possession of, or trafficking in a controlled substance as defined the uniformed narcotics act of 1982[sic].

1. Kentucky Revised Statutes (KRS) 218A.1412.

2. KRS 532.080(2).

3. In his report, Det. Straub also noted that Evans "was in possession of the key that opened the locked box[.]"

4. KRS 218A.500(2).

5. KRS 218A.1422.

Det. Straub and several other officers from the LMPD executed the search warrant on January 16, 2001, at approximately 9:00 p.m. Evans was not present when the officers began searching his apartment, however, his girlfriend was present throughout the duration of the search. While searching Evans's apartment, the officers found a locked fireproof safe in the living room. Det. Shane Ensminger took the safe to the bedroom and pried it open. In the safe he found several items of contraband, namely, cocaine, digital scales, morphine tablets, and marijuana. Shortly thereafter, Evans arrived at his apartment and he was placed under arrest. According to the police report filed by Det. Straub, Evans admitted to owning the contraband found in the safe.[3]

On March 12, 2001, Evans was indicted by a Fayette County grand jury for trafficking in a controlled substance in the first degree (cocaine), possession of drug paraphernalia,[4] possession of marijuana,[5] and being a PFO II. On July 5, 2001, Evans filed a motion to suppress the items seized from the safe. Evans claimed that the safe did not fall within the scope of the search warrant and that he had a greater expectation of privacy with respect to the contents of the safe due to the fact they were secured in a locked container. Evans also filed a motion *in limine* asking the trial court, *inter alia*, "[t]o test any police so-called 'expert testimony' pursuant to KRE 702."[6]

6. Evans relied upon *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *Goodyear Tire & Rubber Co. v. Thompson*, Ky., 11 S.W.3d 575 (2000), and *Mitchell v. Commonwealth*, Ky., 908 S.W.2d 100 (1995), in support of his motion *in limine*.

On July 9, 2001, the trial court held an evidentiary hearing on Evans's pre-trial motions. Counsel argued their respective positions but neither attorney cited any case law nor did either seek leave to file legal memoranda. Following their arguments, the trial court issued on oral ruling denying Evans's motion to suppress. The trial court concluded that the scope of the search warrant "naturally includes any place existing in the home where these items could be found, including a locked box."

The trial court also denied part 5 of Evans's motion *in limine*. In arguing this motion, Evans's counsel objected to any police officer testifying as an expert witness concerning the methods and procedures commonly used by a cocaine trafficker and a cocaine user, but he failed to specify the questions to which he was objecting. The trial court, with the apparent acquiescence of counsel for both sides, framed the questions as follows: [7]

1. How is cocaine commonly packaged for sale?
2. How much cocaine would a cocaine user commonly consume?
3. What types of items are commonly used by a cocaine dealer?
4. What types of items are commonly used by a cocaine user?

The trial court orally ruled that these types of questions would be allowed if the Commonwealth were able to lay the proper foundation for the expert witness's testimony.

On July 10, 2001, Evans entered a conditional plea of guilty to the charges of trafficking in a controlled substance in the first degree and being a PFO II.[8] Evans was sentenced to prison for five years on the trafficking conviction, which was then enhanced to ten years as a result of his PFO II conviction. This appeal followed.

Evans raises two issues on appeal. First, Evans claims the trial court erred by denying his motion to suppress the contraband seized from the safe found in his apartment. In *Commonwealth v. Neal*,[9] this Court stated:

An appellate court's standard of review of the trial court's decision on a motion to suppress requires that we first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive. RCr 9.78. Based on those findings of fact, we must then conduct a de novo review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.[10]

When the trial court's findings of fact are not in dispute, as in the case *sub judice*, the question necessarily becomes, " 'whether the rule of law as applied to the established facts is or is not violated.' "[11]

Evans argues that the scope of the search warrant did not include the safe found in his apartment. We disagree. The United States Supreme Court and the Supreme Court of Kentucky have both

---

7. These questions have been paraphrased by this Court.

8. The remaining counts of the indictment were dismissed.

9. Ky.App., 84 S.W.3d 920, 923 (2002).

10. *Neal*, 84 S.W.3d at 923 (citing *Adcock v. Commonwealth*, Ky., 967 S.W.2d 6, 8 (1998);

and *Commonwealth v. Opell*, Ky.App., 3 S.W.3d 747, 751 (1999)).

11. *Adcock*, 967 S.W.2d at 8 (quoting *Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996) (citing *Pullman–Standard v. Swint*, 456 U.S. 273, 289, n. 19, 102 S.Ct. 1781, 1791, n. 19, 72 L.Ed.2d 66 (1982))).

held "that a lawful search of fixed premises generally extends to the entire area in which the object of the search may be found, including the authority to search through drawers, chests, closets, and containers where that object may likely be found."[12]

■ In the case *sub judice*, the search warrant specifically authorized the police to search Evans's apartment for cocaine and any other drug or drug paraphernalia "which may tend to indicate the illegal use of, possession of, or trafficking in a controlled substance[.]" It is obvious that the contraband specified in the search warrant could fit inside the safe and it was reasonable for the officers to search inside the safe for such contraband.[13] Thus, the language of the search warrant clearly encompassed the safe. As Professor LaFave points out in his treatise on the Fourth Amendment:

> [C]ourts are least demanding when the objects described are contraband. "If the purpose of the search is to find a specific item of property, it should be so particularly described in the warrant as to preclude the possibility of the officer seizing the wrong property; whereas, on the other hand, if the purpose is to seize not a specific property, but any property of a specified charter, which by reason of its charter [footnote omitted] is illicit

or contraband, a specific particular description of the property is unnecessary and it may be described generally as to its nature or charter."[14]

■ Evans also argues that beyond the expectation of privacy he had in his apartment that he had an even greater expectation of privacy with respect to the contents of the safe due to the fact they were secured in a locked container. Evans contends that his expectation of privacy in the safe was independent of rather than part of his expectation of privacy in his apartment. We cannot agree.

■ "The fact that the [safe] was locked did not give [Evans] any greater expectation of privacy in its contents than [his] limited privacy expectation in the rest of [his] apartment in the face of a valid search warrant."[15] As the U.S. Supreme Court stated in *Ross, supra,* "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."[16] Stated otherwise, "[a] legal search authorized by a valid warrant cannot be thwarted by the expedience of concealing the contraband in unusual places."[17] While we found no Kentucky case law directly on point, our holding is

---

**12.** *Hazel v. Commonwealth,* Ky., 833 S.W.2d 831, 834 (1992) (citing *United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572, 591 (1982); and *Estep v. Commonwealth,* Ky., 663 S.W.2d 213 (1983)).

**13.** *See United States v. Wright,* 704 F.2d 420, 422–23 (8th Cir.1983).

**14.** 2 Wayne R. LaFave, *Search and Seizure* § 4.6(b), p. 560 (3d ed.1996) (quoting *People v. Schmidt,* 172 Colo. 285, 473 P.2d 698, 700 (1970)).

**15.** *State v. Hansen,* 732 P.2d 127, 131 (Utah 1987).

**16.** *Ross,* 456 U.S. at 820–21, 102 S.Ct. 2157 (citing LaFave, *supra* at 656–57 and 670–71; and *Massey v. Commonwealth,* Ky., 305 S.W.2d 755, 756 (1957)).

**17.** *Hansen, supra* at 131. *See also United States v. Morris,* 647 F.2d 568, 573 (5th Cir. 1981). "It would be a different matter if the box had been in a geographic area not covered by the warrant or if the objects sought in the warrant were of a size that would not fit in the box. Neither of those situations are the case here however." *Id.*

consistent with the results reached by the majority of jurisdictions that have addressed this issue.[18]

In his brief, Evans cites *United States v. Issacs,*[19] and *United States v. Diggs,*[20] in support of his argument, but those cases are easily distinguishable from the case *sub judice.* The search warrant in *Issacs* authorized Secret Service agents to search Issacs's residence for rent receipts and counterfeit Federal Reserve notes. While the agents were searching Issacs's apartment, they found a locked safe in the bedroom closet. Issacs provided the agents with the combination and they opened the safe. Upon opening the safe, the agents found six journals bound together with a rubber band. One of the agents flipped through the journals and noticed what appeared to be a record of drug transactions in one of the journals. Although the agent noticed nothing similar in the remaining journals, he seized all six journals. The trial court, over Issacs's objection, admitted the journals as evidence.[21] Issacs was convicted of two counts of possession with intent to distribute methaqualone and cocaine.[22]

On appeal, Issacs claimed that the journal which contained the incriminating nota-

tions did not come within the plain view exception to the search warrant requirement and should have been suppressed from evidence.[23] The United States Court of Appeals for the Ninth Circuit disagreed and held that the "trial court properly admitted the journal in which agents observed the incriminating notations."[24] However, the Court went on to hold that "since the preliminary examination uncovered nothing incriminating about the remaining journals, it follows that the agents had no right to seize them in order that they might more closely exam them later."[25] The case *sub judice* is clearly distinguishable from *Issacs* since the contraband herein was seized pursuant to the search warrant and its seizure was not dependent upon the plain view doctrine.

Since *Diggs* involved a warrantless search, it is also clearly distinguishable from the case at bar where the LMPD had a valid warrant to search Evans's apartment for drug-related contraband.[26] We conclude that the trial court correctly denied Evans's motion to suppress the contraband seized from the safe found in his apartment.

▇▇▇▇ Evans next contends that the trial court "committed clear error" when it

---

18. *See, e.g., United States v. Gonzalez,* 940 F.2d 1413, 1420 (11th Cir.1991); *United States v. Snow,* 919 F.2d 1458, 1460 (10th Cir.1990); *Wright,* 704 F.2d at 422–23; *Morris, supra* at 573; *Hansen, supra* at 131; *State v. Jackson,* 268 N.J.Super. 194, 632 A.2d 1285, 1292 (Ct. Law Div.1993); and *People v. Kibblewhite,* 178 Cal.App.3d 783, 785, 224 Cal.Rptr. 48 (Cal.App.1986).

19. 708 F.2d 1365 (9th Cir.1983).

20. 569 F.2d 1264 (3rd Cir.1977).

21. The journal that contained the incriminating notations was admitted as substantive evidence of guilt. The other journals were admitted for impeachment purposes only. *Id.* at 1366.

22. *Id.*

23. Issacs never contested the agents' authority to examine the contents of the locked safe. In fact, he provided the agents with the combination. *Id.* Issacs simply argued that the journal was beyond the plain view of the agents because they "needed to read its contents to uncover the incriminating notations." *Id.* at 1367.

24. *Id.* at 1370.

25. *Id.*

26. *Diggs,* 569 F.2d at 1264–65.

failed to evaluate the expert opinion evidence proffered by the Commonwealth under the standard adopted by the Supreme Court of Kentucky in *Goodyear Tire, supra.* We disagree. A trial court's ruling as to the admissibility of evidence is reviewed under an abuse of discretion standard.[27] An abuse of discretion occurs when a "trial judge's decision [is] arbitrary, unreasonable, unfair, or unsupported by sound legal principles." [28]

In *Goodyear Tire* the Supreme Court held that the factors used in determining the admissibility of expert scientific testimony set forth in *Daubert, supra,* and *Mitchell, supra,* also apply to the testimony of experts with technical or other specialized knowledge. Relying on *Kumho Tire,* the Court concluded that *Daubert* and *Mitchell* apply

> not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. [See KRE 702]. We also conclude that a trial court may consider one or more of the more specific factors that Daubert [and Mitchell] mention[ ] when doing so will help determine that testimony's reliability. But ... the test of reliability is "flexible," and Daubert's [and Mitchell's] list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants [the trial] court the same broad latitude when it decides how to determine reliability as it enjoys

in respect to its ultimate reliability determination.[29]

The Court went on to note that the application of *Daubert* and *Mitchell* is "markedly different depending on whether the method or technique, upon which the testimony is based, has been recognized as reliable by existing case law." [30]

In *Sargent v. Commonwealth,*[31] our Supreme Court had previously recognized the reliability of police testimony in drug-related cases as follows:

> The trial judge did not commit error in allowing the police to testify as to their expert opinion that the Sargents had the drugs in their possession for sale and not personal use.... Both detectives testified about the marijuana trade which is certainly specialized in character and outside the scope of common knowledge and experience of most jurors. The opinion of the police aided the jury in understanding the evidence and resolving the issues [citations omitted].[32]

In *Allgeier v. Commonwealth,*[33] the Supreme Court explained that a police officer's expert testimony concerning whether there was evidence of a forced entry in a burglary "can be distinguished from the more extensive and complex knowledge required for testimony by traditional experts, such as accident reconstructionists

---

**27.** *Goodyear Tire,* 11 S.W.3d at 577–78.

**28.** *Id.* at 581.

**29.** *Id.* at 577 (quoting *Kumho Tire,* 526 U.S. at 141–42, 119 S.Ct. 1167).

**30.** *Goodyear Tire,* 11 S.W.3d at 579.

**31.** Ky., 813 S.W.2d 801 (1991).

**32.** *Id.* at 802. *Accord Burdell v. Commonwealth,* Ky., 990 S.W.2d 628, 634 (1999);

*Kroth v. Commonwealth,* Ky., 737 S.W.2d 680, 681 (1987); and *Brown v. Commonwealth,* Ky.App., 914 S.W.2d 355, 357 (1996). *See generally* Thomas M. Fleming, J.D., Annotation, *Admissibility, in Criminal Prosecution, of Expert Opinion Allegedly Stating Whether Drugs Where Possessed With Intent to Distribute–State Cases,* 83 A.L.R.4th 629 § 3 (1991).

**33.** Ky., 915 S.W.2d 745 (1996).

and forensic pathologists." [34]

Clearly, expert testimony concerning methods and procedures commonly used in drug trafficking and in the consumption of drugs is only admissible if it is based upon proper experience.[35] However, in the case *sub judice*, the trial court specifically stated that the Commonwealth would be required to lay a "proper foundation of experience" prior to introducing any expert testimony concerning methods and procedures commonly used in the trafficking and use of cocaine. In fact, the trial court even agreed with Evans that the Commonwealth would be precluded from offering any expert testimony regarding whether the drugs found in Evans's apartment were intended for resale as opposed to personal use. Thus, we cannot say that the trial court abused its discretion in denying Evans's motion *in limine.*

Based upon the foregoing reasons, the judgment of conviction and sentence entered by the Fayette Circuit Court is affirmed.

ALL CONCUR.

---

**34.** *Id.* at 747.

**35.** *Sargent,* 813 S.W.2d at 802.