**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Mary Delores MAESTAS, Defendant-Appellant.**

**No. 76–2103.**

United States Court of Appeals, Fifth Circuit.

Feb. 10, 1977.

Rehearing Denied March 16, 1977.

Lucian B. Campbell, Federal Public Defender, C. Larry Mathews, Jr., Asst. Federal Public Defender, El Paso, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., San Antonio, Tex., Michael T. Milligan, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD, Circuit Judge, and MEHRTENS, District Judge.[*]

[*] Senior District Judge for the Southern District of Florida, sitting by designation.

MEHRTENS, District Judge:

This is an appeal from a jury conviction on two counts of causing forged checks to be transported in interstate commerce, in violation of 18 U.S.C. § 2314. We affirm.

A check purportedly issued by the Harris Trust and Savings Bank of Chicago, Illinois was presented for payment at a bank in El Paso, Texas. The check was payable to and purportedly endorsed by a Chatherine Reynolds, and was presented with a deposit slip made out to her account at the bank, which channeled $1,743.50 into the existing account and paid the person presenting it $2,500 in cash. The check was then transmitted from El Paso to Chicago for payment but was returned because it was a forgery (Count I). On the same date an almost identical check (except for the amount) payable to Mrs. Russell Scott was cashed in an almost identical split-deposit transaction at another El Paso bank. This check was also transmitted in interstate commerce for payment and returned because it was counterfeit (Count II).

The teller who handled the first transaction identified the defendant as the woman presenting the check, but she was less certain of her identification when shown a photospread by the FBI a month and a half before the trial. A latent fingerprint of the defendant's left index finger was found on the back of this check.

The teller in the second transaction could not identify the defendant as the person who presented the check, but the defendant's fingerprints were found on the deposit slip. The fingerprint evidence was less than perfect. The FBI laboratory had originally reported finding fingerprints on the bogus check made out to Mrs. Reynolds and on her signature card which the passer of the check had handled during the transaction, and not on any document in connection with the transaction involving the Scott check. The FBI fingerprint expert explained the inconsistency between her office's report and her trial testimony as an administrative error.

When interrogated by the FBI, the defendant denied having touched any of the checks at the Harris Trust and Savings Bank.

Because the only direct evidence (a single in-court identification of the defendant) was clouded by the witness' pre-trial hedging when shown a photospread and the circumstantial evidence (the fingerprint) was weakened by the inconsistency between the expert's pre-trial reports and her testimony in court, the prosecution turned to evidence of similar acts to establish identity.

Seven other transactions were introduced into evidence over defendant's objection. They involved cashier's checks essentially identical to the two cashed in El Paso. In five of the transactions one or more of defendant's fingerprints were found on either the check or deposit slip or both. There was no direct evidence that any of these checks were cashed by the defendant. All of the checks, however, were counterfeit; all were made payable to women; all were cashed in split-deposit transactions; all were transported in interstate commerce for payment; and the defendant was linked to all of them, with the exception of the first of these checks cashed at Denver, Colorado. All of the checks were identical except for the amounts involved. In the Denver transaction the prosecution introduced a photograph of the defendant leaving the bank after cashing it, and the defendant admitted that the photograph was genuine. A month after these transactions occurred Denver police executed a search warrant at defendant's apartment in Denver. A large number of blank checks and identification cards were discovered, all of which turned out to be counterfeit. The trial court denied a motion to suppress the counterfeit checks and ID cards recovered from the defendant's apartment in Denver.

The defendant asserts that the search was unlawful in that the supporting affidavit did not show probable cause.

The affidavit supporting the search warrant sets out the following:

A large number of counterfeit checks had been passed in the Denver area, among them being two checks with defendant's fingerprints; defendant's prints had been found on two of the checks, as well as a third check which had been stolen from the mails; defendant had been arrested,

charged with forgery, and had made bond; there was also a warrant for her arrest outstanding in Milwaukee, Wisconsin; nineteen days earlier, Chicago police, executing a search warrant at a print shop in Chicago, found evidence that counterfeit checks and identification materials were being sent to defendant Maestas (under the alias Dee Lewis); the print shop where this contraband originated was owned by a close associate of Edgar Richard Lewis; Patrice Talifiero, who claimed to be a sister of defendant Maestas and who had visited her following her arrest, was wanted by authorities in Chicago for possession of a counterfeit Colorado driver's license; Ms. Maestas and Mr. Lewis both lived at the address which the affiant was seeking permission to search.

While there is no firsthand evidence in the affidavit that materials subject to seizure were in the premises where the officers proposed to conduct their search, this is not always necessary. For instance, evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence. *United States v. Lucarz,* 430 F.2d 1051 (9th Cir. 1970); *United States v. Rahn,* 511 F.2d 290 (10th Cir. 1975). A similar rationale has been employed to sustain searches of an alleged murderer's living quarters for blood-stained clothing, *Iverson v. State of North Dakota,* 480 F.2d 414 (8th Cir. 1973), and of a motor vehicle observed at the scene of a post office burglary, *United States v. Evans,* 447 F.2d 129 (8th Cir. 1971).

The affidavit need not contain information providing certainty that the objects sought will be found as a result of the search. It is only necessary that "the facts and circumstances described in the affidavit would warrant a man of reasonable caution to believe that the articles sought were located" at the place where it was proposed to search. *United States v. Rahn, supra,* at 293. It is axiomatic that an affidavit for search warrant is to be interpreted in a common sense and realistic manner, and the magistrate's finding of probable cause should be sustained in doubtful or marginal cases. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

Interpreting this affidavit in a common sense and realistic manner, it very clearly alleges that the defendant was part of a large-scale interstate counterfeiting ring, an allegation buttressed by her close association with known counterfeiters. She apparently had a position of enough importance in this ring to handle the checks herself (as shown by her fingerprints on them), and it apparently was an ongoing operation, because, nineteen days before, the Chicago police had evidence that her accomplices were sending material to her to be used in the operation.

Defendant's apartment was the only logical place to conduct the search for the counterfeiting paraphernalia. Mail is one of those items that people normally receive and keep at their places of residence. The Cook County Sheriff's office is a reliable source that defendant was receiving counterfeit checks and identification in Denver, under the name of Dee Lewis. Therefore, the affidavit contained ample information from which a reasonable and disinterested magistrate could have concluded that counterfeiting paraphernalia were on the premises sought to be searched.

The defendant also asserts that the district court committed error in admitting the evidence relating to the checks and deposit slips because they consisted of proof of character in wholly separate and independent crimes in violation of Rule 404(b) of the Federal Rules of Evidence.

The general rule is that introduction of a previous unrelated arrest by the prosecution requires reversal where the defendant has not placed her character in issue. Rule 404(b) of the Federal Rules of Evidence provides that evidence of other crimes, wrongs or acts is not admissible proof of character of a person in order to show that he acted in conformity therewith but may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Although it is not necessary at this time to

determine the extent to which, if any, this rule represents a change in the law, the legislative history discloses that (Report of the House Committee on the Judiciary):

" . . . it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i. e. prejudice, confusion or waste of time."

A primary issue in this case and one of the essential elements which the government had to prove was that the defendant was the person who presented the checks in question for payment. The direct evidence of the identity of the forger was weak. The prosecution, therefore, was entitled to produce any other evidence it had that would tend to establish the identity of the defendant as the person who had presented the checks. This is especially so, considering that in cross-examination defendant's counsel had tried to cast doubt on the teller's identification of defendant and the testimony of the fingerprint expert. One way to fortify the testimony identifying defendant as the person who presented the checks would be to show, through other testimony, the evidence which was objected to. Such evidence would give rise to a permissible inference that she was probably the person who passed the checks. This would be circumstantial evidence which at least had enough probative value to warrant its admission as proof of identity. And so, this case falls squarely within the identity exception.

■■ All facts affording any reasonable inference as to the identity of a person charged with having committed a crime are properly admitted when they tend to establish guilt. Any reasonable inference drawn therefrom which might tend to discredit the defendant's character was only incidental and is no valid ground for excluding such testimony. *See Abernathy v. United States,* 402 F.2d 582 (8th Cir. 1968); *Rich v. United States,* 384 F.2d 887 (5th Cir. 1967); *United States v. Deaton,* 381 F.2d 114 (2nd Cir. 1967); and *Cochran v. United States,* 310 F.2d 585 (8th Cir. 1962).

In addition, the evidence objected to also tended to show opportunity, preparation and a common plan or scheme. The totality of the evidence clearly connected defendant with the offenses for which she was on trial. The two checks in the indictment fit very neatly into a pattern of checks which defendant was passing in identical transactions as she travelled from her home in Denver. The articles discovered in her apartment also fit this pattern. While possession of the counterfeit checks and ID cards found in her apartment was not shown at the trial to be criminal, this is not controlling since the exception in Rule 404(b) relates to similar acts, not necessarily similar crimes. *United States v. Senak,* 527 F.2d 129 (7th Cir. 1975).

The defendant's reliance upon *United States v. Goodwin,* 492 F.2d 1141 (5th Cir. 1974); *United States v. Cavallino,* 498 F.2d 1200 (5th Cir. 1974); and *United States v. Broadway,* 477 F.2d 991 (5th Cir. 1973), for reversal is not well founded. In *United States v. Goodwin, supra,* where the defendant was charged with importing marihuana and conspiring to import it, the trial court permitted evidence of Goodwin's arrest in an apparently unrelated incident while in possession of marihuana approximately nine months after the date alleged in the indictment. There was no evidence that the two incidents were part of the same scheme, and in fact the evidence was to the contrary. Subsequently, in *United States v. Cavallino, supra,* a case involving multiple substantially similar offenses occurring at the same time as the charged offense, this court held the similar acts admissible as proof of identity. In *United States v. Broadway, supra,* the facts, although somewhat similar to those in this case, were significantly different. The issue there was not identity but rather criminal intent. Therefore, to be admissible the acts had to include proof of actually passing the checks, which was lacking.

This court in *United States v. Blewitt,* 538 F.2d 1099 (1976), upheld the admission of other allegedly forged checks in the conviction of a defendant who was charged

with aiding and abetting the interstate transportation of two checks. The other five checks which belonged to the same payor were all filled in with the same unauthorized payee and endorsement, and were negotiated during the same time period as the two checks which gave rise to the indictment. The court held that they were properly admissible as part of the *res gestae* of the crimes with which defendant was charged showing involvement in the entire fraudulent scheme. Neither *Goodwin, supra, Cavallino, supra,* nor *Broadway, supra,* barred the admission of the other checks in *Blewitt,* and they do not bar the admission of the other checks in the case at bar. *See* also *United States v. Spica,* 413 F.2d 129 (8th Cir. 1969), an almost identical case, and *United States v. Thompson,* 503 F.2d 1096 (8th Cir. 1974).

Having considered on the merits the asserted errors relied upon by the defendant, we conclude that the district court properly denied the motion to suppress, correctly admitted the evidence of similar acts to prove identity and a common plan or scheme, properly denied the motion for judgment of acquittal, and find no error in the district court's rulings. The judgment, therefore, is affirmed.