**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Calvin Eugene ETLEY and Joyce Ann
Read, Defendants-Appellants.**

No. 77–5613
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 8, 1978.

Rehearing and Rehearing En Banc
Denied July 28, 1978.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Melvyn Carson Bruder, Dallas, Tex., for defendants-appellants, Etley and Read.

Jamie C. Boyd, U. S. Atty., Le Roy Morgan Jahn, Ronald P. Guyer, Archie C. Pierce, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

RONEY, Circuit Judge:

Defendants Calvin Etley and Joyce Read were convicted of conspiracy to make and possess counterfeit currency and possession thereof, in violation of 18 U.S.C.A. §§ 371, 471 & 472. Much of the evidence against them was obtained from a search of defendant Etley's automobile. Defendants appeal the district court's denial of their motion to suppress the evidence, alleging the warrant affidavit provided an insufficient basis for the warrant's issuance. Defendants also allege error in the admission of evidence regarding the passing of counterfeit money by other people. Defendant Etley contends that the evidence against him was insufficient. Finding these contentions to be without merit, we affirm.

The counterfeit money in question was made in Austin, Texas, by defendant Read's ex-husband, Billy Brown, who operated a camera shop. Read's position in the scheme was to locate a buyer for Brown's counterfeits. She sold them to Mack Cotton, a co-indictee who was tried separately. Cotton was caught while passing a counterfeit $50 bill in Dallas, but he convinced the Secret Service that he was an innocent holder of the bill. However, after other counterfeit bills appeared in El Paso at a time when Cotton was there, the Secret Service became suspicious. They had an informer arrange to buy $3,000 in counterfeit bills from Cotton for $1,000. The buy was made at the Cottage Lounge in Dallas with ten marked $100 bills.

Cotton and defendants Etley and Read then left the Cottage Lounge under surveillance of Secret Service agents. They drove to Austin, and registered at a Ramada Inn. Defendant Read left the motel, went to Brown's camera shop, and returned with a small gray projector case. Three minutes later, defendant Etley left the motel room with the gray case and put it in the trunk of his car. Shortly thereafter, they all left the motel in defendant Etley's car, the car was stopped by the agents, and its occupants arrested. Two of the marked $100 bills used for the purchase from Cotton were found in Etley's possession. The agents obtained a warrant to search the car. The gray case, containing approximately $150,000 in counterfeit bills, among other items of evidence, was seized.

*Sufficiency of Warrant Application*

The warrant application recited the following facts: Cotton had passed a counterfeit $50 bill in Dallas. Cotton had been in El Paso when similar bills were passed. An undercover agent overheard Cotton and Etley talking at the Cottage Lounge about taking a trip. They left the Lounge in

Etley's car and proceeded to Austin. Houston Secret Service agents arrested a man attempting to pass similar counterfeit bills who named Brown as his source, and gave the address of Brown's camera store. He then called Brown, who said that he had more counterfeit money available. Agents kept Brown's store and the Ramada Inn under surveillance. Agents saw a "white female" [defendant Read] leave Brown's shop carrying a small case, and other agents saw her enter a motel room at the Ramada Inn carrying the gray case. Minutes later, the agents saw one of the "white males" under surveillance from Dallas [defendant Etley] leave that same room and put the case in the trunk of his car. The agents stopped the car when it left the motel and arrested its occupants. An agent identified one of the car's occupants as Cotton.

Contrary to defendants' contention this information supplied sufficient probable cause for the magistrate to issue the warrant.

There can be no doubt as to the reliability of the facts related in the warrant. Almost all of the information related in the application was observed by the affiant or other Government agents. The Supreme Court has held that "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965). The only information in the application not from a Government agent was that of the man arrested in Houston. The application detailed facts showing that his identification of Brown as the source of the bogus bills was based on personal knowledge, confirmed by Government agents when the man telephoned Brown and Brown said he would have more counterfeit money available. Thus, the reliability of the information in the warrant application is adequately established. *See Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ The only issue, then, is whether the information in the application was sufficient for a magistrate to conclude there was probable cause to believe defendant Etley's car contained counterfeit money. The Supreme Court has held that an affidavit for a search warrant is to be interpreted in a commonsense and realistic manner, and the magistrate's finding of probable cause should be sustained in doubtful or marginal cases. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). An affidavit need not provide absolute certainty a search will reveal the objects sought. It is only necessary that "the facts and circumstances described in the affidavit would warrant a man of reasonable caution to believe that the articles sought were located at the place where it was proposed to search." *United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir. 1977).

Interpreting the affidavit in a commonsense and realistic manner, it clearly contains ample information. The magistrate could conclude that Cotton was involved in a counterfeiting scheme; he traveled to Austin, where one of his companions went to the shop of the source of the counterfeit bills; she left the shop with a case, which was put in the trunk of the car; and Cotton and the others were arrested while traveling in that car. While it was not certain that the case contained counterfeit bills, "a man of reasonable caution" could believe that it did.

The district court did not err in denying defendants' motion to suppress.

*Counterfeit Bills Passed by Third Persons*

■ Over defendants' objections, the trial court allowed the Government to produce evidence regarding Cotton's attempt to pass a counterfeit $50 bill in Dallas, and the passing of counterfeit bills in El Paso and in San Antonio. Defendants contend the court erred in admitting this evidence, which defendants characterize as evidence

of "prior crimes," bringing into play the tests of Rule 404(b), Fed.R.Evid., and *United States v. Broadway*, 477 F.2d 991 (5th Cir. 1973).

■ Cotton's possession and attempted passing of the counterfeit $50 bill in Dallas was an integral part of the instant conspiracy listed in the indictment as an overt act, not a "prior crime." Brown testified that defendant Read told him the counterfeit $50 bills were of such poor quality that one of the people involved was caught attempting to pass one of them. This established that the attempt to pass the $50 bill was part of the common scheme. *See United States v. Bloom*, 538 F.2d 704 (5th Cir. 1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977). As such, the evidence was admissible. If evidence is relevant, it does not become inadmissible merely because it may indicate commission of a prior crime.

■ Defendants have made a motion to supplement the record on appeal in this case with copies of the indictment, judgment, and trial transcript in the separate trial of Cotton. The jury in that case found Cotton innocent of attempting to pass that $50 bill. By order of this Court dated March 14, 1978, defendants' motion was carried with the case. That motion is now denied because the fact that another jury found Cotton not guilty is irrelevant. Even as "prior crime" evidence, the subsequent jury determination of innocence would still be irrelevant. Under *United States v. Broadway*, 477 F.2d 991 (5th Cir. 1973), the elements of prior offenses may be proven by "clear and convincing" evidence, a lesser standard of proof than the beyond a reasonable doubt standard necessary for a criminal conviction.

### Sufficiency of Evidence

■ Defendant Etley contends that the evidence against him was insufficient to show his guilt. The evidence and all rea-sonable inferences drawn therefrom must be viewed in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). There was ample evidence of a conspiracy to produce and pass counterfeit notes, especially considering Brown's testimony for the Government.

■ The issue for examination then is Etley's nexus to the conspiracy. Etley was with Cotton at the Cottage Lounge when the Government informer bought counterfeit money from Cotton. Mere association with members of a conspiracy is, of course, insufficient to establish a person's participation in the conspiracy. Here, however, there was additional evidence. When Etley was arrested, he had in his possession two of the marked $100 bills which were used to purchase counterfeit money from Cotton. Etley drove Read and Cotton to Austin in his car for the purpose of picking up the counterfeit money from Brown. Etley registered at the Ramada Inn in Austin under an assumed name. It was Etley who placed the gray case containing the counterfeit money in the trunk of his car as soon as Read brought it to the motel. Defendant Read told Brown that she was dealing with a builder and a Dallas policeman. Cotton was a builder, Etley a Dallas policeman. The evidence was sufficient for the jury to find that defendant Etley was a participant in the conspiracy with the requisite guilty intent.

AFFIRMED.