**UNITED STATES of America, Plaintiff,**

**v.**

**Paul DUNLAP, Quinten Poncho Abeyta, and Tony Chalmers, Defendants.**

**Crim. A. No. 98–CR–206–M.**

United States District Court,
D. Colorado.

Aug. 12, 1998.

George Gill, Assistant U.S. Attorney, for plaintiff.

Robert Pepin, Craig Shaffer, Terri Harrington, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, Chief Judge.

The defendants seek to suppress the testimony at trial of two government witnesses on the ground that their testimony must be considered tainted because they agreed to testify in exchange for government promises to seek leniency for their own criminal conduct. More particularly, the government entered into an agreement with Thomas Horton, memorialized by a letter dated December 19, 1997, that he would not be prosecuted for any federal crimes known to the government except for a charge of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), then pending as Criminal Action No. 97–CR–380–S.

The government also agreed to enter into a plea agreement for an 18–month prison term pursuant to Rule 11(e)(1)(C) and to withhold information given by Mr. Horton from any other prosecuting authority who has not entered into a use immunity agreement with him. In exchange, Thomas Horton agreed to cooperate with the government by providing information concerning bank robberies and other matters, such cooperation to include "complete and truthful testimony" in any grand jury hearing, judicial proceeding and trial. That agreement was then reflected in a plea agreement presented to the court in Case No. 97–CR–380–S, and the government followed through with a motion for downward departure under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) resulting in the court's sentencing pursuant to the agreement.

The government also entered into an agreement with Edna C. Inniss, memorialized in a letter dated June 1, 1998, that it would not prosecute her for any crimes known to the government, excepting for an information charging her with aiding the bank robbery alleged as Count II of the indictment in this case, and to enter into a plea agreement, pursuant to Rule 11(e)(1)(C) for a prison term of 24–30 months. The government also agreed to withhold information from any other law enforcement agency that has not entered into a use immunity agreement. In exchange, Ms. Inniss agreed to cooperate by providing information relating to the bank robberies charged in this criminal case and that cooperation includes an agreement to testify. No charge has yet been filed against Ms. Inniss.

The legal premise for these motions to suppress is that these agreements are felonious because they violate 18 U.S.C. § 201(c)(2), which reads as follows:

(c) Whoever—

. . . .

(2) directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or

any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or for or because of such person's absence therefrom;

. . . .

shall be fined under this title or imprisoned for not more than two years, or both.

That prohibition, commonly referred to as the "anti-gratuity" statute, is a subsection of a bribery of public officials statute first enacted in 1962. Subsection 201(c)(3) prohibits corresponding conduct, as follows:

(c) Whoever—

. . . .

(3) directly or indirectly, demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon any such trial, hearing, or other proceeding, or for or because of such person's absence therefrom;

shall be fined under this title or imprisoned for not more than two years, or both.

Thus, under a strict textual analysis of these paragraphs, standing alone, every plea agreement pursuant to Fed.R.Crim.P. 11(e) involving any promise by the government to provide the defendant with any aid in lessening the amount of liberty lost in sentencing for admitted criminal conduct involves the prosecuting attorney, the defendant, his defense counsel, and the court as complicitors in the commission of a crime. Such a consequence is so contrary to long established practices in criminal law enforcement and so out of synchronization with other statutes and rules as to require a review of the legal authority for plea bargaining as a legitimate method of adjudicating criminal charges in United States district courts.

Under Article I of the United States Constitution, Congress declares and defines the substantive criminal law and Article II, Section 3, Clause 4 assigns responsibility to the President to "take Care that the Laws be faithfully executed[.]" The judicial power of adjudication is given to the courts created by Congress pursuant to Article III.

These powers are not entirely separate. *Mistretta v. United States*, 488 U.S. 361,

364–65, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

Congress has the primary role. It defines what conduct is criminal. It has established the Department of Justice as an executive department, 28 U.S.C. § 501, and the office of Attorney General as head of that department. 28 U.S.C. § 503. The statutory responsibilities of the Department of Justice include the supervision of all litigation in which the United States or any of its agencies or officers is a party and to give direction to all United States Attorneys and their assistants. 28 U.S.C. § 519. The office of United States Attorney was created by 28 U.S.C. § 541 to perform the duties under 28 U.S.C. § 547, including the prosecution for all offenses against the United States. Congress has established United States district courts in each of the states as the tribunals for trial adjudication of criminal charges. 28 U.S.C. § 132.

By enactment of the Rules Enabling Act of 1934, Congress delegated its presumed legislative powers to make procedural rules to the Supreme Court, subject to its Congressional veto. That legislation, as amended, is now codified at 28 U.S.C. §§ 2071–2077. Notably, § 2072 has the following provisions:

(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrates thereof) and courts of appeals.

(b) Such rules shall not abridge, enlarge or modify any substantive right. *All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.* (emphasis added)

. . . .

Among the rules promulgated pursuant to these prescribed powers and procedures is Rule 11(e) of the Federal Rules of Criminal Procedure. It expressly authorizes plea bargaining and providing inducements for a defendant to plead guilty to filed charges in the following language:

(1) *In General.* The attorney for the government and the attorney for the defendant or the defendant when acting pro

se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

> (A) move for dismissal of other charges; or

> (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

> (C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

That authority conflicts with the language of 18 U.S.C. § 201(c)(2) and (3).

In addition to the power to make particular conduct criminal, Congress prescribes the punishment for crimes and in the Sentencing Reform Act of 1984, it created the United States Sentencing Commission, 28 U.S.C. §§ 991–998, to establish sentencing policies and practices for the federal criminal justice system to meet the purposes of sentencing set forth in 18 U.S.C. § 3553 and empowered the Commission to promulgate guidelines for use by the sentencing court in determining each sentence, 28 U.S.C. § 994. Under 18 U.S.C. § 3553(a) a sentencing court, in determining a particular sentence to be imposed, must consider those guidelines, policy statements issued by the Sentencing Commission and under subsection 3553(e), the court may, upon motion of the government, impose a sentence below a statutory minimum sentence "so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." Such a reduction must be in accordance with the guidelines and policy statements issued by the Sentencing Commission.

The Sentencing Commission has issued policy statements governing the acceptance of plea agreements under Rule 11(e)(1). U.S.S.G. §§ 6B1.1–6B1.4.

The Sentencing Commission has also provided a policy statement governing rewards for substantial assistance under 18 U.S.C. § 3553(e) at U.S.S.G. § 5K1.1 as follows:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

> (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

>> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

>> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

>> (3) the nature and extent of the defendant's assistance;

>> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

>> (5) the timeliness of the defendant's assistance.

The official commentary to that policy statement gives the following background:

> *Background: A defendant's assistance to authorities in the investigation of criminal activities has been recognized in practice and by statute as a mitigating sentencing factor. The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors, including those listed above. The sentencing judge must, however, state the reasons for reducing a sentence under this section. 18 U.S.C. § 3553(c). The court may elect to provide its reasons to the defendant in camera and in writing under seal for the safety of the defendant or to avoid disclosure of an ongoing investigation.*

Fed.R.Crim.P. 35(b) empowers government counsel to seek a reduction in a sentence to reflect a defendant's subsequent

substantial assistance in the investigation or prosecution of another person.

Congress has made other provisions for offering leniency and other concessions in return for testimony. In 18 U.S.C. §§ 6001–6005, prosecutors may obtain court orders granting immunity, extending to state prosecutions as well, and in the Witness Relocation and Protection Act, the Attorney General is authorized to provide housing, payment of living expenses and other benefits in return for "an agreement to testify." 18 U.S.C. § 3521(b)(1) and (d)(1)(A). Congress has also authorized monetary rewards for information about crimes. See 19 U.S.C. § 1619; 26 U.S.C. § 7623 and 28 U.S.C. § 524(c)(1)(C).

The anti-gratuity statute was first enacted in 1962 and redesignated to its present form as 18 U.S.C. § 201(c)(3) in 1986. It is clear that this subsection states a different offense from the bribery provisions in other subsections and contains no requirement that the agreement be made corruptly or with any intention or motivation to influence testimony.

What makes the statute inapplicable to the agreements made with the government's witnesses here is the well established and long recognized principle that participation in a criminal enterprise by law enforcement personnel "is a recognized and permissible means of investigation." *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Thus, in *United States v. Vargas,* 925 F.2d 1260 (10th Cir.1991), the Tenth Circuit Court of Appeals reversed this court's refusal to permit a defendant to earn a reduction in her sentence pursuant to U.S.S.G. § 5K1.1 by participation in an undercover controlled buy of drugs. In so doing, the court said:

> As we have already seen, the sentencing guidelines and federal rules of criminal procedure clearly contemplate situations where criminal defendants will cooperate with the government and provide "substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1; Fed.

R.Crim.P. 35(b); *see also* 28 U.S.C. § 994(n); 18 U.S.C. § 3553(e).

*Id.* at 1265.

■ It has been suggested that this law enforcement justification for engaging in conduct which might otherwise be criminal is limited to the actions of field agents in detection, apprehension, and prevention of crime and that it should be unavailing for prosecutors as officers of the court and lawyers who are subject to the Colorado Rules of Professional Conduct, particularly Rule 3.4(b) prohibiting the offer of "an inducement to a witness that is prohibited by law." That, of course, begs the question of whether plea agreements expressly authorized by the Federal Rules of Criminal Procedure, sentencing statutes and sentencing guidelines, all of which have been approved by Congress, can be considered to be prohibited by 18 U.S.C. § 201(c). There is no justification for holding that the implied and court-created doctrine of law enforcement justification should not apply to attorneys for the government acting in accordance with policies expressly approved by the Congress.

In her authority to supervise United States Attorneys, the Attorney General has established policies which are collected and published as the United States Attorneys' Manual and § 9–27.400 of that manual expressly authorizes plea agreements and § 9–27.420 directs what considerations must be weighed in exercising this discretion. Thus, the agreements made by the prosecutors in this case were fashioned in accordance with established policy and in the exercise of the sovereign authority of the United States. The Supreme Court recognized in *Hoffa v. United States,* 385 U.S. 293, 311, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) the historical foundation for the use of informers and that the veracity of witnesses and their testimony is determined by a properly instructed jury after being tested by cross-examination. The Court has recognized the legislative goal of encouraging plea bargaining as recently as 1995 in *United States v. Mezzanatto,* 513 U.S. 196, 207, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995).

■ It would be wholly inconsistent with this congressionally authorized practice of

plea agreements that provide leniency to defendants in exchange for cooperation to hold that Congress intended to criminalize such agreements in 18 U.S.C. § 201(c). For these reasons, this court holds that the agreements made with the government's witnesses did not violate the anti-gratuity statute. These agreements were within the express authority granted by the Congress in the rules and statutes cited herein and consistent with official policy established by the Attorney General of the United States and the United States Sentencing Commission. It is, therefore,

ORDERED that the motions to suppress are denied.