UNITED STATES of America, Plaintiff,

v.

Steven Floyd JOHNSON, Defendant.

No. Crim. 94–50015–17.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 9, 1998.

David S. Steingold, David S. Steingold Assoc., Detroit, MI, Thomas J. Plachta, Plachta & Coash, P.C., Bay City, MI, Federal Defender, Federal Defender Office, Flint, MI, for Steven Floyd Johnson, defendant.

*MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF SELECT GOVERNMENT WITNESSES AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AS FRUIT OF AN ILLEGAL SEARCH AND SEIZURE OF A PRIVATE RESIDENCE*

GADOLA, District Judge.

Presently before the Court are two motions filed by defendant Steven Floyd Johnson, also known as Floyd Johnson or Floyd Sean Johnson. Johnson is charged in Count One of the First Superseding Indictment with Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Defendant's motion to exclude testimony of select government witnesses was filed on October 22, 1998. The motion to suppress evidence as fruits of an illegal search and seizure of a private residence was filed on October 15, 1998. The government responded to the above-enumerated defendant's motions on November 2, 1998. At the hearing held on November 13, 1998, defendant requested an opportunity to file a reply brief, with respect to his motion to suppress evidence as fruits of an illegal search and seizure of a private residence. The Court granted this request, and on November 19, 1998, defendant submitted his reply brief.[1]

For the reasons set forth hereinbelow, this Court will deny defendant's motion to exclude testimony of select government witnesses. The Court also will deny defendant's motion to suppress evidence as fruits of an illegal search and seizure of a private residence.

## I. BRIEF FACTUAL BACKGROUND

On August 12, 1998, the residence located at 18940 Hilton Drive, Southfield Michigan was searched by federal agents pursuant to a search warrant. The warrant was based upon information obtained from confidential informants, as well as the personal observations of Alcohol, Tobacco & Firearms (ATF) Special Agent Todd J. Bowen. Bowen had been conducting an investigation into the so-called "Eaddy drug organization," and had received information during the past seven months relating to defendant Johnson, Manuel Eaddy, and Maurice Eaddy. Seized from the residence were, among other items, marijuana, ammunition, scales, financial records, and photographs.

## II. DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF SELECT GOVERNMENT WITNESSES

Defendant seeks to exclude testimony of "confidential informants" and/or other witness who have allegedly been given leniency in exchange for providing testimony against defendant Johnson. To substantiate this claim, defendant points to several paragraphs in the affidavit in support of the search warrant relating to Johnson's home and vehicle. *See* Exh. A to Defendant's Motion to Exclude, p. 10. As a threshold matter, defendant has not presented any evidence that an

---

1. Two other motions were filed by defendant in addition to the motions discussed herein, to wit: (1) defendant's motion to suppress statement and (2) defendant's motion to suppress evidence as fruits of an illegal search and seizure of an automobile. *See* Order issued November 16, 1998. At the hearing conducted on November 13, 1998, the parties stipulated to adjourning oral argument on defendant's motion to suppress statement until just prior to the trial in the above-entitled matter. Furthermore, this Court has denied as moot defendant's motion to suppress evidence as fruits of an illegal search and seizure of an automobile, due to the fact that the government does not intend to introduce any evidence seized from the vehicle in question. *See id.*

exchange of leniency for testimony has been made in the case at bar. The mere fact that the government relied upon confidential witnesses in support of its affidavit for search warrant does not automatically entail that these witnesses have made a deal with the government in exchange for their testimony.[2]

Assuming arguendo that the government did promise leniency in exchange for the testimony of confidential witnesses, the defendant still must come forward with some legal authority to support his position that the testimony should thereby be excluded. In an attempt to advance some authority for this position, defendant cites 18 U.S.C. § 201(c)(2), which is entitled "Bribery of public officials and witnesses." The statute prohibits the offering or promising "of anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding...." 18 U.S.C. § 201(c)(2). Defendant argues that Section 201(c)(2) should be interpreted so as to apply when the government "rewards" witnesses who assist the prosecution, either through offering plea agreements or immunity. *See U.S. v. Singleton*, 144 F.3d 1343 (10th Cir.1998), *vacated pending en banc reconsideration; see also U.S. v. Lowery*, 15 F.Supp.2d 1348, 1351 (S.D.Fla.1998) (following *Singleton* ).

The government argues that the Executive Branch is charged under the Constitution with the unique obligation of executing federal law, including the investigation and prosecution of federal crimes. U.S. Const. art. II, § 3. In carrying out its obligation to investigate and prosecute federal crimes, the government maintains that the practice of providing some benefit to criminals in exchange for truthful testimony against coconspirators is both longstanding and pervasive, and a bedrock of the criminal justice system. This practice has been recognized and approved on many occasions by the Supreme Court. *See Ullmann v. U.S.*, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956) (immunity); *Kastigar v. U.S.*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (same); *Hoffa v. U.S.*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (paid informants); *Giglio v. U.S.*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (leniency for accomplices). Moreover, the practice of "rewarding" witnesses for assisting in a prosecution is approved by statutes, court rules, and sentencing guidelines. *See* 18 U.S.C. § 3059(B) (permitting payment of rewards "to any individual who assists the Department of Justice in performing its functions"); 18 U.S.C. § 3521 (compensation relating to protection of witnesses); 18 U.S.C. § 3553(e) ("rewarding" an individual with a recommendation for a lower sentence based on his or her "substantial assistance"); 18 U.S.C. § 6003 (specifically authorizing the grant of immunity); 28 U.S.C. § 994(n) (guidelines are to reflect the appropriateness of imposing a sentence lower than the statutory minimum based on defendant's substantial assistance); Fed.R.Crim.Proc. 35(b) (reduction for post-sentence cooperation); U.S.S.G. § 5K1.1; *see also U.S. v. Arana*, 1998 WL 420673 (E.D.Mich. July 24, 1998); *U.S. v. Guillaume*, 1998 WL 462199 (S.D.Fla. Aug.3, 1998); and *U.S. v. Dunlap*, 1998 WL 477435 (D.Co. Aug.12, 1998).

■ In opposition to the great weight of authority referenced by the government, defendant relies upon *U.S. v. Singleton*, 144 F.3d 1343 (10th Cir.1998), holding that 18 U.S.C. § 201(c)(2) does apply to promises of immunity or leniency by the government in a

---

**2.** Defendant points to Paragraph 15 on page 10 of the affidavit of ATF Agent Todd Bowden, wherein the agent states that "[d]uring this investigation, I have ... spoken with a confidential informant (CI–1), who has provided information on several different occasions and has agreed to testify in future court proceedings about the information." See Exh. A to Defendant's Motion to Exclude. In addition, defendant cites Paragraph 17 on page 11 of the same affidavit, which provides that "[d]uring the course of this investigation, I have received evidence and information from different sources, including co-defendant

statements and search warrants.... I also know that CI–1 and CI–2 signed Rule 11 plea agreements and agreed to provide assistance in this investigation." Lastly, defendant references Paragraph 24 on page 13: "CI–3 previously pled guilty to conspiracy to distribute controlled substances and admitted being a member of the Eaddy crack cocaine distribution organization." While the above-quoted passages may raise an inference that some or all the confidential witnesses were offered leniency in exchange for their testimony, the passages do not prove that such deals were made.

criminal cases. *See Singleton,* 144 F.3d at 1360. As the government points out, however, *Singleton* has been stripped of its precedential value due to the Tenth Circuit's decision to vacate pending en banc rehearing. *See* Exhibit A to Government's Response, Tenth Circuit Order filed July 10, 1998; *see also* Tenth Circuit Rule 35.6; *Wright v. Tennessee,* 628 F.2d 949, 950 (6th Cir.1980).[3]

The U.S. District Court for the Eastern District of Michigan has recently considered the *Singleton* decision, and rejected both its reasoning and precedential value. *See U.S. v. Arana,* 18 F.Supp.2d 715 (E.D.Mich.1998) (Rosen, J.). In *Arana,* a case very similar to the instant action, the court held that the government's plea agreements with co-defendants and witnesses did not violate the anti-bribery statute, 18 U.S.C.A. § 201(c)(2). As the court reasoned,

> [t]he prosecutor is not "giving" anything; in the Rule 11 agreements at issue here, the Government has simply agreed to recommend reduced sentences. It is a matter for the court to decide whether or not to "give" the downward departure. That application of Section 201(c)(2) to federal prosecutors would work an "absurdity" is further demonstrated by the inconsistency that would exist between the anti-bribery statute and the federal sentencing statutes, 18 U.S.C. § 3553(e), and the sentencing guidelines.

*Arana,* 18 F.Supp.2d at 718. This Court sees no reason to stray from the cogent analysis of the *Singleton* decision set forth in the *Arana* decision.

■ In light of the above, the Court will deny defendant's motion to exclude testimony of select government witnesses. Defendant has not shown that leniency was given in exchange for testimony. Even if such a deal were made, the arrangement would not run afoul of the Constitution, and thus exclu-

sion of the confidential informants' testimony and/or other witnesses is not required.

## III. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AS FRUIT OF AN ILLEGAL SEARCH AND SEIZURE OF A PRIVATE RESIDENCE

Defendant has submitted two motions challenging the execution of a search warrant at 18940 Hilton, Southfield, Michigan, conducted by ATF agents on August 12, 1998. The motion which will be discussed herein concerns the search of Johnson's residence. Defendant's other motion, attacking the validity of the search of defendant's automobile, has been denied as moot because the government has no present intention of introducing any evidence obtained from the vehicle. As a result of the search of the residence, the agents seized, among other items, marijuana, ammunition, scales, financial records, and photographs. Both searches were made pursuant to a warrant issued by Magistrate Judge Goldman, and premised upon an affidavit of Special Agent Todd J. Bowden. *See* Exh. 3 to the United States' Answer and Brief in Response to Defendant's Motions to Suppress Evidence Seized from a Residence and a Vehicle.

### A. THE STANDING ISSUE

As the government points out, a threshold issue which first must be resolved is whether in fact the defendant has standing to challenge the execution and legality of the search in question. Although defendant neglected to explicitly address the standing issue in his motion, the government, at the hearing on November 13, 1998, agreed to withdraw its objection to defendant's standing to contest the search and seizure of the private residence. Accordingly, the Court will assume for purposes of this motion that defendant is in fact the owner of the residence in question. Thus, the issue becomes whether the

---

**3.** Similarly, this Court is not bound by the decision of the U.S. District Court for the Southern District of Florida in *Lowery,* which followed the Tenth Circuit's reasoning in *Singleton. See U.S. v. Lowery,* 15 F.Supp.2d 1348, 1351 (S.D.Fla. 1998). A federal district court is not bound by the decision of another district court. *See Thigpen v. Cheminova, Inc.,* 992 F.Supp. 864, 868–69

(S.D.Miss.1997) (holding that unless doctrine of res judicata or collateral estoppel applies, district judges are not bound by decisions of other district judges; it is federal appellate courts, not federal district courts, that are charged with responsibility for maintaining uniformity of the law).

search and seizure pursuant to the warrant issued by the magistrate judge was valid. Defendant has raised several arguments contesting the legitimacy of the search and seizure. These arguments shall be discussed immediately below.

### B. WHETHER THE EVIDENCE SEIZED SHOULD BE SUPPRESSED BECAUSE THE AFFIDAVIT SUPPORTING THE SEARCH WARRANT CONTAINED KNOWING OR RECKLESS FALSEHOODS AND/OR MATERIAL OMISSIONS OF FACT

Defendant argues that the search warrant was invalid because it was based on Agent Bowden's defective affidavit. According to defendant, the affidavit contained "knowing falsehoods" and several omissions of material fact. First, defendant maintains that Agent Bowden's statement that "there is now concealed" narcotics, firearms, and records of drug transactions in the house to be searched was a false statement. Second, defendant asserts that the agent misled the magistrate judge by intentionally leaving out dates when surveillance was conducted and when information was obtained from the confidential informants. According to defendant, this amounts to a material omission of fact and rises to the level of being a knowing falsehood contained in the affidavit. Defendant argues that the information upon which the affidavit was based was "stale," and thus could not have been the basis for the issuance of a valid search warrant.

In response, the government argues that the affidavit was based on reliable information of confidential informants and on the agent's own observation and surveillance of the residences in question. With respect to the argument that Bowden made a false statement in asserting that contraband and other items were present in the residences, the United States counters that the affidavit clearly explains Bowden's background knowledge concerning the Eaddy drug and firearms investigation. Moreover, Paragraph 12 of the affidavit explains that *during the past 7 months* Bowden had received information as to the whereabouts of Manuel Eaddy,

Maurice Eaddy, and Steven Johnson. Also in Paragraph 12, the Agent described an anonymous letter which stated the location of Manuel Eaddy, as well as where money and drugs were being stored, and where illegal drugs were being "cooked." In addition, the government points out that in Paragraphs 12 through 14, Agent Bowden explains why the anonymous letter appeared to be authentic and to reflect personal knowledge regarding the Eaddy organization. Furthermore, Paragraphs 15–19 or the affidavit discuss information provided by the confidential informants, and their detailed background knowledge concerning specific facts relating to the alleged drug production organization of defendants.

Given the specific and detailed information in the affidavit relating to the members of the Eaddy organization and their alleged drug-related activities, it cannot be maintained that Agent Bowden made a "false statement" by asserting that "there is now concealed a certain *person or property*" in the house or houses to be searched. The residence in question, located at 18940 Hilton, Southfield, Michigan, is one of several addresses enumerated in the affidavit. The affidavit uses the disjunctive, "person *or* property," when describing the subject-matter of proposed the search. From the reliable information that was provided to Agent Bowden, it was reasonable for him to assert that either the suspects themselves or the contraband described would be found at the enumerated residences. It is well-settled that an affidavit need not provide absolute certainty that a search will reveal the objects sought. *U.S. v. Etley,* 574 F.2d 850, 852 (5th Cir.1978). "It is only necessary that 'the facts and circumstances described in the affidavit would warrant a man of reasonable caution to believe that the articles sought were located at the place where it was proposed to search.'" *Id.* (citing *U.S. v. Maestas,* 546 F.2d 1177, 1180 (5th Cir.1977)).

Similarly, there is no evidence to suggest that Agent Bowden intentionally misled Magistrate Judge Goldman by omitting dates or any other pertinent information regarding the investigation. To the contrary, the affidavit contains numerous specific references

to dates regarding the surveillance activities and investigatory practices of Agent Bowden. Paragraph 30 of the affidavit discloses that Bowden surveilled the residence in question on August 4, 1998. *See* Affidavit ¶ 30. Previously, on June 17, 1998, the agent had surveilled 18940 Hilton Drive, and determined that the residence matched the description provided by Confidential Informant 2 (CI–2). *See* Affidavit ¶ 23. On the same date, affiant further states that the agent personally observed a Toyota Land Cruiser registered to Toyota Lease Trust, with the lessee identified as Floyd Steven Johnson. The registration filed with the Michigan Secretary of State contained the address, 18940 Hilton Drive, Southfield, Michigan. In addition, Agent Bowden conducted a utility check to determine the identity of the person paying the utility bills at the residence in question. On June 19, 1998, he was advised that "utilities at 18940 Hilton, Southfield, have been registered to Deanna Eaddy since April 28, 1998." *See* Affidavit ¶ 23.

In light of the above facts contained in the affidavit, defendant's complaint that the magistrate judge was misled by Agent Bowden is unfounded. The affidavit has not been shown to present any "knowing falsehoods" nor to have omitted any material facts. Defendant's assertion that the agent intentionally left out dates when surveillance was conducted and when information was obtained from the confidential informants is not consistent with a full reading of the affidavit.

## C. WHETHER THE EVIDENCE SEIZED SHOULD BE SUPPRESSED BECAUSE THE AFFIDAVIT DID NOT PROVIDE PROBABLE CAUSE TO SEARCH THE RESIDENCE LOCATED AT 18940 HILTON DRIVE, SOUTHFIELD, MICHIGAN

### 1. LEGAL STANDARD

Probable cause to search has been defined as a "fair probability" that contraband or other evidence of a crime will be found at the place to be searched. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see also United States v. Savoca*, 761 F.2d 292, 297 (6th Cir.1985) (holding that the "critical element in a reasonable search ... is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought") (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), ) *cert. denied*, 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985).

Probable cause is assessed in light of the "totality of circumstances." *Gates*, 462 U.S. at 238, 103 S.Ct. 2317. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* A reviewing court should not examine de novo the sufficiency of an affidavit supporting a warrant. *Id.* at 236, 103 S.Ct. 2317. Rather, "the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis ... for conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir.) (quoting *Gates*, 462 U.S. at 236, 103 S.Ct. 2317), cert. denied 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). The reviewing court should pay great deference to a magistrate's probable cause determination and should not set aside a magistrate's finding of probable cause unless it is "arbitrary." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir.1996); *see also Massachusetts v. Upton*, 466 U.S. 727, 732–33, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *United States v. Pelham*, 801 F.2d at 877 (citing *United States v. Swihart*, 554 F.2d 264, 270 (6th Cir.1977)). In doubtful or marginal cases, the reviewing court should uphold the magistrate's finding. *Lockett*, 674 F.2d at 845. The rationale for this deference stems from a preference for the search warrant process over warrantless searches. Id.

In *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court rejected the strict, two-pronged probable cause test established in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509,

12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). That test required that a search warrant affidavit based on an informant's tip contain information regarding the "reliability or credibility" of the informant and the "basis in knowledge" of his or her tip. In *Gates*, the Supreme Court explained that while these elements " 'may usefully illuminate the commonsense, practical question of whether there is "probable cause" to believe that contraband or evidence is located in a particular place,' they should not be '[understood as entirely separate and independent requirements to be] rigidly exacted in every case....' " *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir.1986) (quoting *Gates*, 462 U.S. at 230, 103 S.Ct. 2317). *Gates* established that courts must apply a "totality of the circumstances" approach in determining the existence of probable cause. See id. "Probable cause is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.' " *Id.* at 230–231, 103 S.Ct. 2317 (quoting *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949))

## 2. ANALYSIS

Defendant argues that the evidence should be suppressed because the warrant was issued without probable cause to believe that evidence of a crime would be found on the premises. By defendant's own admission, however, Agent Bowden established in his affidavit that Johnson allegedly supplied the Eaddy organization with weapons. This was attested to by three different confidential informants. In addition, Confidential Informant 2 stated that Johnson "lives in the 18000 block of Hilton and Santa Barbara." Affidavit ¶ 23. The affidavit also stated that Johnson had allegedly sold crack cocaine at various times in the past.

■ Applying the *Gates* totality of the circumstances test for assessing probable cause, this Court holds that the affidavit was sufficient to support the magistrate judge's finding of probable cause to search the residence in question. Defendant's challenge centers upon the credibility of the confidential informants and the anonymous source, and also attacks the information received as being "stale." [4] Defendant's argument are without merit. Defendant appears to be arguing under the standard previously articulated in *Aguilar v. Texas* and *Spinelli v. United States*, i.e., that a search warrant affidavit based on an informant's tip contain information must contain information supporting the "reliability or credibility" of the

---

**4.** In defendant's reply brief, he argues that "[t]he affidavit contains information relevant to the request to search the other two premises which have no bearing whatsoever on the existence of probable cause, or the lack thereof, as it pertains to the residence of Floyd Steven Johnson." Defendant's Reply Brief, p. 2. Defendant's argument evinces an overly narrow conception of the probable cause requirement, and ignores the wealth of information acquired by Agent Bowen relating to the whereabouts of defendant Johnson, and his connection to the Eaddy drug organization. The affidavit need not establish with certainty that drugs or drug-related items would be found at 18940 Hilton Drive. Rather, as discussed above, probable cause will be found where there is a "fair probability" that contraband or other evidence of a crime will be found at the address to be searched. *See Gates*, 462 U.S. at 238, 103 S.Ct. 2317. Courts routinely uphold a finding a probable cause to search a residence where the occupant or owner has shown to have been involved in the sale of drugs. *See U.S. v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 874 (10th Cir.1992) (holding that evidence of claimant's involvement in drug trafficking coupled with opinion of officer that drug dealers frequently keep records or notations of their transactions where they have ready access, provided sufficient nexus for a reasonable person to conclude that drug records would be maintained at claimant's home); *U.S. v. Martin*, 920 F.2d 393, 399 (6th Cir.1990) (finding probable cause to search defendant's home when agent stated in affidavit that, in his experience, person engaged in distribution of cocaine frequently keeps at his residence a number of items described in affidavit); *U.S. v. Hargus*, 128 F.3d 1358, 1361 (10th Cir.1997) (holding that sufficient nexus between objects to be seized and place to be searched for them is established when circumstances set out in affidavit underlying search warrant would justify person of reasonable caution in believing that articles sought would be found at place to be searched; there need not be direct evidence or personal knowledge that items sought are located at place to be searched); *U.S. v. Kelley*, 6 F.Supp.2d 1168, 1178 (D.Kan.1998) (holding that "[w]here a suspect has no place of business separate from [his] residence, it is reasonable for an officer to conclude that evidence may be at the suspect's residence.").

informant and the "basis in knowledge" of his or her tip. As discussed above, the *Gates* decision changed the landscape of the probable cause analysis. Under *Gates,* credibility of informants is still an important factor, but it is one of many other factors to be applied in determining the totality of circumstances impacting the probable cause determination.

In the instant case, the magistrate judge had more than sufficient information upon which a finding of probable cause could be based. The affidavit contained ample surrounding circumstances to indicate a "fair probability that contraband or evidence of a crime" would be found in the residence in question. Furthermore, the Court notes that the affidavit set forth the investigative experience of Agent Bowden, as well as the specific instances of surveillance which produced corroboration of the informants' tips.

 With respect to defendant's charge that the information was too old or "stale" to support a probable cause determination, it is well-settled that probable cause may continue for weeks or months after the last incidence of suspect activity. *See U.S. v. Angulo–Lopez,* 791 F.2d 1394, 1398 (9th Cir.1986); *see also U.S. v. Sandoz,* 784 F.Supp. 777 (D.Or.1992) (upholding affidavit issued in May 1991 after 11 transactions occurred during period from December 1989 through December 1990); *U.S. v. McNeese,* 901 F.2d 585 (7th Cir.1990) (finding probable cause 3 months after cocaine was discovered in garbage search); *U.S. v. Smith,* 9 F.3d 1007 (2d Cir.1993) (noting that gap of weeks or months between last act and warrant issuance does not necessarily make information stale). As the Third Circuit held in *U.S. v. Harvey,* 2 F.3d 1318 (3d Cir.1993),

> [a]ge alone ... does not determine staleness. "The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant." *United States v. Williams,* 897 F.2d 1034, 1039 (10th Cir.1990), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991). Rather, we must also examine the nature of the crime and the type of evidence. *United States v. Tehfe,* 722 F.2d 1114, 1119 (3d Cir.1983), *cert. denied,* 466

U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984); *Forsythe,* 560 F.2d at 1132; *see also United States v. McCall,* 740 F.2d 1331, 1335–36 (4th Cir.1984).

*Harvey,* 2 F.3d at 1322. In the case at bar, Agent Bowden's affidavit stated that the information relied upon had been received during the past seven months. *See* Affidavit ¶ 12. As to the residence in question, the affidavit reflected a broad range of information alleging that the Eaddy organization, including defendant Johnson had been selling narcotics for a long period of time, and was continuing to do so. This included conversations with more than one confidential informant during June through August 1998, including co-defendants well familiar with the Eaddy organization. Much of the information provided was corroborated by Bowden's surveillance, as previously discussed. Moreover, courts routinely consider the experience of law enforcement officers in upholding searches under the fair probability test. *See U.S. v. Caicedo,* 85 F.3d 1184, 1192–93 (6th Cir.1996) (accepting 15 years of law enforcement experience as basis for upholding search); *U.S. v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 874 (10th Cir.1992) (holding that evidence of claimant's involvement in drug trafficking coupled with opinion of officer that drug dealers frequently keep records or notations of their transactions where they have ready access, provided sufficient nexus for a reasonable person to conclude that drug records would be maintained at claimant's home); *U.S. v. Martin,* 920 F.2d 393, 399 (6th Cir.1990) (finding probable cause to search defendant's home when agent stated in affidavit that, in his experience, person engaged in distribution of cocaine frequently keeps at his residence a number of items described in affidavit).

In view of the foregoing considerations, this Court finds that probable cause existed to support the search warrant issued by the magistrate judge. Accordingly, defendant's motion to suppress evidence as fruit of an illegal search and seizure of a private residence must be denied.

## *ORDER*

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant's motion to ex-

clude testimony of select government witnesses is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion to suppress evidence as fruits of an illegal search and seizure of a private residence is **DENIED.**

**SO ORDERED.**